# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUE L. KNIGHT AND | : | Civil No. 1:08-CV-1976 |
| JOHN N. KNIGHT, Individually and | : | |
| as Parents and Natural Guardians | : | |
| of JOHN N. KNIGHT, II, a minor, | : | |
| | : | |
| Plaintiffs, | : | (Caputo, J.) |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFFS' PETITION FOR APPROVAL OF MINOR'S SETTLEMENT AND DISTRIBUTION

Plaintiffs, Jacque L. Knight and John N. Knight, parents and natural guardians of John N. Knight, II, a minor hereby petition this Court for an Order approving the settlement and approving distribution of funds and in support thereof aver as follows:

1. Plaintiffs, Jacque L. Knight and John N. Knight are the parents and natural guardians of John N. Knight, II, a minor.

2. On October 30, 2008, a Complaint was filed against Defendant, The United States government alleging negligence against employees of the federal government and setting forth claims under the US Federal Tort Claims Act 28 U.S.C. § 1326.

3. The Complaint alleged that on March 7, 2006 Defendants were negligent in failing to use appropriate methods and techniques in the delivery of Minor-Plaintiff causing severe and permanent injuries to him.

4. Specifically, Minor-Plaintiff sustained physical injuries of a brachial plexus nerve injury to his left arm, a facial palsy, and vision issues and claims were made for pain and suffering, medical expenses, as well as past and future loss of earning capacity.

5. The Defendant through its employees; nurse midwives and Dr. Orndorf, denied any negligence in the prenatal care or in the delivery itself and specifically claimed that excessive force was not used to deliver Minor-Plaintiff. They also claimed that this was a difficult delivery and the injuries occurred without any negligence.

6. Trial was scheduled in this case for June 1, 2010 before Your Honor.

7. On April 19, 2010 Judge Jones acted as a mediator in an attempt to resolve the matter amicably.

8. As a result of the efforts of Judge Jones, on April 22, 2010 an offer of $975,000 was made by Defendant to Plaintiffs in exchange for a general release with payment to be made within 60 days and permitting a 25% attorney's fee as authorized by the Federal Tort Claims Act.

9. On April 22, 2010 Plaintiffs accepted the above-referenced offer .

10. Attached hereto as Exhibit "A" is a true and correct copy of the proposed release.

11. It is respectfully submitted that the $975,000 offer is fair and reasonable for the reasons set forth below.

12. The attached report of Minor-Plaintiff's treating physician, Scott Kozin, MD dated May 23, 2009, and the attached report of Plaintiffs' expert, Charles Bean, MD dated October 16, 2009 set forth the current condition of the Minor-Plaintiff recommending occupational therapy, speech therapy, confirming the necessity for ongoing ophthalmological care and further recommending an evaluation by a developmental pediatrician. (Dr. Kozin's report is attached hereto as Exhibit "B" and Dr. Bean's report is attached hereto as Exhibit "C").

13. Attached hereto as Exhibit "D" is the OT Evaluation of October 29, 2009 by Bonnie Wareham, OTR/L recommending occupational therapy.

14. The liability in this case was vigorously contested. Plaintiff contended that there was an excessive weight gain during the pregnancy, that no clinical pelvimetry had been performed, that this was an anticipated large baby with an increased risk of being unable to pass through the birth canal and therefore a cesarean section needed to be performed.

15. The Defendant rebutted each of these contentions. Specifically, Defendant contended while there was a large weight gain, the mother was not a gestational diabetic and therefore no special precautions had to be taken. Defendant contended further that pelvimetry had been performed and the passageway was adequate for a safe vaginal delivery. Defendant contended that while the baby was anticipated to be a large baby, it was not so large as to meet the American College of Obstetrics and Gynecology's definition of a macrosomic fetus and therefore ceserean section was not indicated.

Defendant finally contended that all maneuvers were appropriately done to deliver this baby and that excessive traction or pulling was not used.

16. Specifically, in addition to the Defendants claiming that the damages were not caused by any negligence, the amount of damages were disputed. For example, on the loss of earning capacity claim, the Defense contended that Minor-Plaintiff would be employable as an adult and would only have a minimal wage loss over his lifetime. Additionally, the Defense contended that the Plaintiffs' Life Care Plan was not supported by the medical evidence. Specifically, the Defense contended that Minor-Plaintiff did not need any future surgeries nor future medical care or therapy. Defendant contended that the injury was permanent and not capable of any improvement.

17. Given the nature of the liability and damages claimed and the potential for a defense verdict and/or a compromised award, after due consideration, the Plaintiffs agreed to accept the sum of $975,000 in settlement of their son's claims.

18. The Honorable John Jones was also of the view that this was a fair settlement.

19. Plaintiffs respectfully request a 25% contingency fee on the $975,000 settlement or $243,750 based on the amount of work that was performed to obtain the settlement. Specifically, Plaintiffs' Counsel obtained all medical records, retained Dr. Steven Klein, an ob-gyn, Dr. Charles Bean, a pediatric neurologist, Cassandra Garcia, CNM, a certified nurse midwife, Dr. Donald Jennings, a vocational expert, Mona Yudkoff, a certified life care planner, and Andrew Verzilli, an economist. Written reports were obtained from each of these experts and provided to the defense. Written discovery was exchanged. Plaintiffs' Counsel fully developed the case for the administrative pre-suit purposes.

Plaintiffs' Counsel fully prepared and presented the case for a court-appointed mediator Allen Nealey, Esq. including a Powerpoint Presentation of all aspects of the case. Plaintiffs' Counsel deposed Dr. Orndorf, Nurse Midwives Myers and Besecker, and Nurse Courtney Greenwood. Plaintiffs' Counsel presented Plaintiffs, John and Jacque Knight and Stella Knight (grandmother present at delivery) for deposition. Plaintiffs' Counsel submitted additional expert reports after discovery was concluded and prepared the case fully for mediation before Judge Jones and was fully prepared to take the matter to trial. In addition, Plaintiffs' Counsel also gave legal counsel concerning maximizing the potential therapies, occupational and speech and developmental specialists in order to help their son. This work was performed by the undersigned counsel who invested numerous hours to achieve the result. (Attached hereto as Exhibit "E" is a true and correct copy of the Contingent Fee Agreement signed by the Plaintiffs which permitted a 1/3 fee when it was not known that this was a Federal Tort Claims Act Case and subject to a 25% fee).

20. Plaintiffs' Counsel has advanced $30,616.61 in costs. Attached hereto as Exhibit "F" is a true and correct copy of the statement of costs.

21. There are no Medicare, federal or state liens.

22. There is an ERISA lien of $18,434.59 for medical expenses paid for Minor-Plaintiff which Plaintiffs' Counsel has negotiated a 25% reduction to $13,825.94 due and payable to the Rawlings Company who is representing the lienholder. Attached hereto as Exhibit "G" is a statement of lien and as Exhibit "H" confirming email reducing the lien amount.

23. Plaintiff parents, in an effort to maximize the potential for their son, have followed the advice of the professionals caring for Minor-Plaintiff and have been taking their son for weekly occupational therapy visits with Lynn Wenrick, OT and weekly speech therapy sessions with Kathy Prieston, ST.

24. In addition, Plaintiff parents have taken their son for bi-annual ophthalmologic examinations with Dr. Arsitimuno where he gets examined and refitted for glasses every six months.

25. In addition, the Plaintiff parents have scheduled a visit with developmental pediatrician Dr. Jeanette C. Ramer at Hershey Medical Center.

26. The Plaintiff parents' medical coverage does not fully cover the costs of the occupational therapy, speech therapy, ophthalmologic examinations nor will it cover the developmental pediatrician evaluation.

27. Plaintiff parents respectfully request this Court to award them the costs of past medical expenses for their son in the amount of $3,100 from December 15, 2009 to the present, which charges they have paid out of their own pocket. This $3,100 is the sum total of 20 weeks of Occupational Therapy at $55/week x 20 weeks = $1,100.00; Speech Therapy at $55/week x 20 weeks = $1,100.00; three eye examinations with Dr. Aristimuno at $80/exam = $240 and fittings for glasses at $260, $235 and $165 for visits of May 21, 2009, October 30, 2009 and May 4, 2010. (Attached hereto as Exhibit "I" is a copy of Plaintiff parents' receipts and supporting documentation).

28. Plaintiff parents request further that this Court permit the withdrawal of $6,766.00 out of Minor-Plaintiff's Money Market Fund as an advance for the next twelve months to cover the future out-of-pocket/co-pay for the medical expenses the Minor-Plaintiff will need as set forth below:

|  |  |  |
|---|---|---|
| a. | Occupational Therapy $55/week x 52 weeks = | $2860 |
| b. | Speech Therapy $55/week x 52 weeks = | $2860 |
| c. | Developmental Pediatrician Exam | $486 |
| d. | Eye Examinations and Fittings | $560 |
| | **TOTAL** | **$6766** |

29. The Plaintiff parents, after great consideration and research, have decided that they would like to have their son's share of the proceeds invested in an annuity utilizing $500,000 and to deposit the remaining funds in a court-restricted Money Market Account and respectfully request this Court to approve same.

30. Attached hereto as Exhibit "J" is the details of the annuity/structured settlement they wish to purchase.

31. The structured settlement meets federal guidelines of security and is a safe investment in that it is rated A+ Superior by the AM Best rating company.

32. The remaining $176,941.45, upon Court approval, shall be deposited in court-restricted FDIC insured Money Market Account.

33. The annuity and the Money Market Account for Minor-Plaintiff shall be restricted with an Order stating that "[N]o withdrawal can be made from any such account until the minor attains majority, except as authorized by a prior order of this Court."

34. Wherefore, Plaintiffs respectfully request this Court approve the settlement of $975,000 and to approve the below listed distribution.

| | |
|---|---|
| Amount received in full settlement | $975,000.00 |
| 25% Attorney's Fee | $243,750.00 |
| Reimbursement of Costs | $ 30,616.61 |
| Repayment of ERISA Lien | $ 13,825.94 |
| Reimbursement to Plaintiff Parents for past medical expenses | $ 3,100.00 |
| Advance to Plaintiff Parents for future medical expenses | $ 6,766.00 |
| To Jackson National Life Insurance Company for purchase of an annuity for Minor-Plaintiff | $500,000.00 |
| To Minor Plaintiff, John N. Knight, II to be deposited in a restricted Money Market Account for his use only | $176,941.45 |

35. Plaintiffs' Counsel shall file proof of compliance with this Court's Order that the deposits for the benefit of the Minor-Plaintiff have been made in restricted accounts.

WHEREFORE, it is respectfully requested that this Honorable Court enter the proposed attached Order.

Howard J. Levin, Esquire
Beth A. Adamski, Esquire
Two Liberty Place
50 S. 16th Street
28th Floor
Philadelphia, PA 19102
Tel. (215) 299-4359
Fax. (215) 574-1200
hlevin0711@gmail.com

| | | |
|---|---|---|
| JACQUE L. KNIGHT AND | : | Civil No. 1:08-CV-1976 |
| JOHN N. KNIGHT, Individually and | : | |
| as Parents and Natural Guardians | : | |
| of JOHN N. KNIGHT, II, a minor, | : | |
| | : | |
| Plaintiffs, | : | (Caputo, J.) |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## ORDER

AND NOW this _____ day of _____, 2010 upon consideration of

Plaintiffs' Petition for Approval of Minor's Settlement and Distribution and Defendant's response

thereto it is hereby ORDERED and DECREED that the settlement is approved in the amount of

$975,000.00 with payment to be made within 30 days of the date of this Order.

It is further Ordered that the distribution of the settlement shall be as set forth below:

    1. To Howard J. Levin, Esquire Attorney's Fee of 25% in the amount of $243,750.00.

    2. To Howard J. Levin, Esquire for reimbursement of attorney's costs of $30,616.61

    3. To Rawlings & Company reimbursement of ERISA line of $13,825.94

    4. To Plaintiff Parents for reimbursement of past medical co-pays $3,100.00

    5. To Plaintiff Parents for anticipated medical co-pays for ensuing twelve months

$6,766.00.

6. To Jackson National Life Insurance Company $500,000.00 for the purchase of an annuity for Minor-Plaintiff subject to the terms and condition of this Court.

7. To Minor-Plaintiff, John N. Knight, II $176,941.45 to be deposited in a restricted Money Market account(s) that is/are federally insured or guaranteed by the United States Government with each deposit stating "[N]o withdrawal can be made until the minor attains majority or except as authorized by Order of this Court."

8. Plaintiffs' Counsel shall provide proof that the annuity and the account(s) have been opened in compliance with paragraphs 6 and 7 above within 30 days of the date of this Order.

By the Court:

_____

Caputo, J.

**EXHIBIT "A"**

| | | |
|---|---|---|
| JACQUE L. KNIGHT AND | : | Civil No. 3:08-CV-1976 |
| JOHN N. KNIGHT, Individually and | : | |
| as Parents and Natural Guardians | : | |
| of JOHN N. KNIGHT, II, a minor, | : | |
| | : | |
| Plaintiff, | : | (Caputo, J.) |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

It is hereby stipulated by and between the undersigned Plaintiffs (meaning any person, other than the defendant, signing this agreement, whether or not a party to this civil action), and the United States of America, by and through their respective attorneys, as follows:

1.    The parties do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Settlement Agreement.

2.    This Stipulation for Compromise Settlement and Release is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to Plaintiffs. This settlement is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

3.    It is the understanding of the parties that Plaintiffs have agreed to settle this action

for a total sum of $975,000.00. As such the parties agree that any attorney's fees owed by Plaintiffs by virtue of the $975,000.00 amount attributable to the health care providers that are deemed to be agents of the United States shall not exceed 25% of the $975,000.00 of the total settlement (28 U.S.C. § 2678) and must be paid out of the settlement amount and not in addition thereto.

4.     Plaintiffs and their guardians, heirs, executors, administrators, or assigns do hereby accept the cash sums set forth above in full settlement and satisfaction of any and all claims, demands, rights and causes of action of whatsoever kind and nature, including any future claims for fees, costs and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, death, or damage to property, and the consequences thereof, which Plaintiffs or their heirs, executors, administrators, or assigns may have or hereafter acquire against the United States, its agents, servants and employees on account of the same subject matter that gave rise to the above-captioned action. Plaintiffs and their guardians, heirs, executors, administrators, and assigns do hereby further agree to reimburse, indemnify and hold harmless the United States and its agents, servants, and employees from and against any and all such claims, causes of action, liens, rights, or subrogated or contribution interests incident to or resulting or arising from the acts or omissions that gave rise tot he above-captioned action, including claims or causes of action for wrongful death.

5.     Plaintiffs' attorney agrees to distribute the settlement proceeds among Plaintiffs and to obtain dismissal of the above-captioned action with prejudice, with each party bearing its own fees, costs, and expenses.

6.     The parties agree that this Stipulation For Compromise Settlement And Release, including all the terms and conditions of this compromise settlement, may be made public in

their entirety, and the plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

7.    It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party.  All such counterparts and signature pages, together, shall be deemed to be one document.

Executed this _____ day of _____, 2010



_____
Michael J. Butler, Esquire
Assistant United States Attorney
Attorney for Defendant United States
 of America

Executed this _____ day of _____, 2010



_____
Howard J. Levin, Esquire
Two Liberty Place
50 S. 16th Street
Philadelphia, PA 19102
Attorney for Plaintiffs


Executed this _____ day of _____, 2010



_____
Jacque L. Knight, Individually
and as Parents and Natural Guardians
of John N. Knight, II, minor

Executed this _____ day of _____, 2010



_____
John N. Knight, Individually
and as Parents and Natural Guardians
of John N. Knight

**EXHIBIT "B"**

May 23, 2009

Howard J. Levin, Esquire
1710 Spruce Street
Philadelphia, PA 19103

Re: John Knight, II, minor

Dear Mr. Levin,

## Initial Evaluation

John Knight II is a patient at Shriners Hospital for Children in Philadelphia. He was
initially seen at 3-months of age on May 31, 2006. History revealed that John was born
full-term weighing 10 lb., 10 oz via vaginal delivery at Chambersburg Hospital. The
delivery was difficult requiring forceps and a vacuum. Apgar scores were 2 and 2. A right
proximal humerus fracture occurred during birth. He did not have any respiratory
problems after birth. John was noted to have a flail left upper extremity and also a
drooping left eyelid with pupil asymmetry.

Examination revealed John to be a normal appearing baby boy. His left pupil was
asymmetric with a drooping of his left eyelid indicative of a Horner's syndrome. His left
upper extremity was held flail. No active movement at any of the joints was noted in the
left upper extremity including those muscles innervated by C5, C6, C7, C8 and T1. He
had a normal appearing right upper extremity. There was no tenderness and all of his
joints were supple throughout the right upper extremity. Lower extremities were normal.

Initial diagnosis was left global brachial plexus palsy and time was spent with family
discussing treatment options. Permanent impairment was also discussed based upon the
initial presentation with complete involvement of the entire brachial plexus.

## Subsequent Treatment

John was seen for follow-up examination on July 5, 2006. There was some minor
improvement in shoulder motion, elbow extension, and finger motion. There was a little
wiggle of finger flexion. Horner's still was still very evident. John was scheduled for
surgery in August. The procedure including risks and benefits were discussed. Repeat
evaluation on September 1, 2006 showed some further return of finger flexion. Active
Movement Scale measured shoulder adduction 0, shoulder flexion 2, shoulder external
rotation 0, shoulder internal rotation 6, elbow flexion 0, elbow extension 7, forearm
supination 0, forearm pronation 7, wrist flexion 0, wrist extension 0, finger extension 0,
thumb extension 0, and finger flexion 7.

Surgery was performed on September 14, 2006 at Temple Children's Medical Center.
Surgery consisted of the following:

1) Exploration of brachial plexus.
2) Neurolysis of the brachial plexus.
3) Clavicular osteotomy.
4) Transfer of C7 to the anterior division of the upper trunk, posterior division of the upper trunk, and posterior cord.
5) Spinal accessory to suprascapular nerve transfer.
6) Ulnar motor fascicle to biceps transfer.

Findings at time of surgery included:
1) Avulsion of C5
2) Avulsion of C6
3) Rupture of C7
4) Intact lower trunk

Follow-up on January 17, 2007 noted Active Movement Scale as follows: shoulder abduction 2, shoulder adduction 6, shoulder flexion 0, shoulder external rotation 0, shoulder internal rotation 7, elbow flexion 0, elbow extension 5, forearm supination 0, forearm pronation 2, wrist flexion 0, wrist extension 0, finger flexion 6, finger extension 0, thumb flexion 6, and thumb extension 0.

Evaluation May 11, 2007 noted that John was 14 months of age, six months following surgery. With regard to his arm, he had triceps and a wiggle of finger flexion. He had shoulder abduction/ forward flexion to about 90 degrees with gravity eliminated. Examination on November 16, 2007 revealed little neurologic change in the left upper extremity. There was no evidence of biceps recovery. Triceps was strong with good finger flexion.

Repeat evaluation was performed on May 16, 2008. Mom noted that the left side of John's face did not sweat. Active Movement Scale was as follows. Shoulder abduction 3 at 115° with gravity eliminated, shoulder adduction 3, shoulder flexion 3, shoulder external rotation 0, shoulder internal rotation 3, elbow flexion 0, elbow extension 6, forearm supination 0, forearm pronation 6, wrist flexion 6, wrist extension 0, finger flexion 6, finger extension 0, thumb flexion 3, thumb extension 0. A splint was fabricated to enhance grip strength.

John was last seen on December 10, 2008, he was noted to be developmental delayed and was having trouble with speech. Active Movement Scale was follows: shoulder abduction to 90°, shoulder adduction 7, shoulder flexion 3, shoulder external rotation 3, shoulder internal rotation 7, elbow flexion 0, elbow extension 7, forearm supination 0, forearm pronation 7, wrist flexion 7, wrist extension 0, finger flexion 7, finger extension 0, thumb flexion 7, thumb extension 0. Modified Mallet score were as follows: global abduction grade 3 at 90°, global external rotation grade 2, hand to neck grade 2, hand on spine grade 2, hand to mouth grade 1, internal rotation grade 2. Diagnosis was persistent left global brachial plexus palsy with limited neurologic recovery.

## Summary

John was born with left global brachial plexus birth palsy affected C5, C6, C7, C8, and T1. His left upper extremity was flail without sensation. A Horner's syndrome was noted. Microsurgery was performed on September 14, 2006. A large area of scarring was found requiring clavicular osteotomy. Nerve avulsions were noted at C5 and C6. C7 was also damaged and nerve transfers were used in an attempt to enhance left upper extremity function.

John has regained little function after microsurgery. The paucity of available motors prohibited formal nerve reconstruction. He has some shoulder motion, elbow extension, and finger flexion. Additional nerve regeneration is expected, although the regeneration will not considerably reduce his impairment. John has limited use of his right upper extremity and barley uses the arm. His impairment and decreased motion in the shoulder, elbow, forearm, and hand function impacts his ability to perform tasks, especially bimanual activity. John's limited hand function will further impact his ability to perform grasp and manipulation of objects with this hand. Normal sensation is not expected. This limb impairment negates the possibility of bimanual employment that requires considerable use of the left arm.

His left limb is shorter compared to his right upper extremity. This shortening will be permanent with a projected difference of 15 and 20% compared to the right side, which will create functional and cosmetic issues. Additional surgeries may be necessary to augment his left upper extremity function. These procedures will involve some form of tendon transfer, osteotomy, and/or fusion. The exact procedure depends upon the amount of neurologic recovery over the ensuing years. These procedures will enhance limb usage, but have little effect on his overall disability. John has sustained a global brachial plexus palsy across his entire brachial plexus that will result in permanent impairment and will require continual monitoring from a physician and therapist throughout his growing years and into adulthood.
Sincerely Yours,

Scott H. Kozin, MD
Professor, Orthopaedic Surgery
Temple University and
Shriners Hospital for Children
Philadelphia, PA 19140



**EXHIBIT "C"**

S. Charles Bean, M.D.
Nemours Neurology Newark
774 Christiana Road, Suite 201
Newark, DE  19713
302-731-3017
302-292-8101 fax

October 16, 2009

Howard J. Levin, Esq.
1710 Spruce Street
Philadelphia, PA 19103

RE:       JOHN KNIGHT
DOB:      03/07/2006

Dear Mr. Levin:

As you know, I saw John Knight in May 2008, for evaluation of a complete Erb-Duchenne palsy
and Horner syndrome with a flail left upper extremity. In the interval, I have reviewed Dr. Scott
Kozin's report dated May 23, 2009 and the notes from Early Intervention and Lincoln
Intermediate Program.

Dr. Kozin's report relates his findings through surgery and his present status, and notes his
surgical findings as avulsion of C5, avulsion of C6, and rupture of C7 nerve trunks with an intact
lower trunk.

His last evaluation of this child in December 2008, noted that there was shoulder abduction to 90
degrees, shoulder adduction 7/10, shoulder flexion of 3, shoulder external rotation of 3, shoulder
internal rotation of 7, elbow flexion 0, elbow extension 7, forearm supination 0, forearm
pronation 7, wrist flexion 7, wrist extension 0, finger flexion 7, finger extension 0, flexion of the
thumb at 7, and thumb extension 0.

He got global abduction to about 90 degrees and global external rotation partial to 2, hand to
neck grade 2, hand to spine grade 2, hand to mouth grade 1, and internal rotation grade 2. In
essence, there was limited neurologic recovery. Mainly some recovery of an increase in flexion
of the fingers and wrist, and slight improvement in the proximal shoulder, but no recovery of the
biceps. He noted a paucity "of available motor fibers, prohibited formal nerve reconstruction,"
and notes that this will "impair his ability to perform tasks, especially bi-manual activities.") He
also noted the shortness of the limb and predicted a 15 to 20% reduction in eventual growth. He
also made note of the developmental delays..

In reviewing the early intervention programs, he was getting speech, OT, and special educational support. At 23 months he had a language delay of at least 30%, expressive language 65%, and adaptation was at least a 13% delay. Clearly, there was what appeared to be a widening gap on reduction of language function.

He had been using TheraTogs on the left, a hand splint, and a arm splint, and has not developed significant lymphedema. He recently has been transitioned to the special educational program because of abnormalities in development, particularly in language. But the family has been worried about continuing in that placement because of a development of some negative behaviors that worry them about where he could have experienced these behaviors.

They report that he is able to help by holding the right side of his arm and both legs out, not the left arm. He requires assistance in removing "simple clothing," is not able to drink from an open cup unless there is assistance, and is not using a spoon. He uses gesture to point to what he wants.

His family reports in the interval that he has been generally well, has had no serious illnesses, infections, or hospitalizations, and no further surgery, although has been getting active therapy.

They brought him to an ophthalmologist who has been putting drops in his good eye to strengthen what may be an amblyopia on the right eye. I do not have those notes and I cannot be certain if this is due to the degree of lid that is covering his pupil, therefore decreasing vision in the left eye. The family has noted absence of sweating over the left forehead.

There are no new untoward events that have occurred, although he bites at his left hand and has left scars on it, often when he is frustrated, and there clearly seems to be some decrease in pain sensitivity of that hand.

We were aware of some delay in language when I saw him a year ago, but now that he is 3-1/2 years old, I am concerned that his language has not become more developed. He will follow single-step commands (if you point). He does not repeat although he will babble frequently. He does seem to have some rich play with toys, pushing cars and the like, but eye contact and social interaction has not developed much since I saw him last. He will come to you and sit on you to get something he wants, or pull you over to something he wants, but there does not seem to be the appropriate give-and-take interaction. I was concerned that he has not made significant progress in social reciprocity, but also impressed that he had become quite ingenious in using his teeth to hold things or the left adduction of his arm against his trunk to hold things so he can work on them with his right. His problem solving seems to be actually quite good.

He apparently is sleeping adequately. He does have some stereotypic mannerisms where he will get up on his toes and tighten his body when he is excited. And although he is active, he seems to be more involved in his own activities than true interaction with others. His general exam is remarkable for a smaller and atrophic left upper limb. He tends to be extended and pronated and adducted to the body. The wrist is flexed and movement of the hand is mainly in flexion of the fingers or wrist, not in extension of the wrist. Good adduction of the arm. The abduction of the

arm can come to about 80 degrees and flexion of the arm forward is about 60 degrees. He cannot get his hand to his mouth. The biceps is essentially 0 in its functioning as well as the wrist extensors and finger extensors on the left. You can passively rotate him behind the back of his neck and his body showing no significant contractures, but profound weakness, and the tone of the limb on the left is extremely weak. There is some sensation proximally to pin, although it seems blunted more distally below the elbow and may be hyperpathic at the palm, but it is spotty. His cognition makes careful testing difficult, but I believe there is a disturbance of sensation in the left hand with hyperpathia and decreased sensation. The cranial nerves are normal save for ptosis of the left eye, myosis, coolness of the left forehead, decreased sweating, and normal facial movement and hearing. He was able to track and follow, and I did not see strabismus today. His fundi were normal. Motor exam revealed legs and right arm to be normal. He ran and climbed, and was quite good about that. Absent deep tendon reflexes left arm, 1 to 2 plus all others.

Observed play showed some imagination, vocalizing with play with babbling poorly understood. Activity level was high and exploring behavior showed high activity. Beginning to show more affection to parents. Starting to make some sounds.

He has a 46-cm head circumference which is large, 40-1/2 inches and 50 pounds. There are no significant neurocutaneous stigmata or congenital malformations. There are no dysmorphic features of his face. Tympanic membranes are normal. Abdomen benign. Stature normal. Lungs are clear. Cardiac exam normal. Regular sinus rhythm without abnormalities.

In essence, John Knight's clinical exam now shows essentially no significant improvement of functional level of his left global Erb-Duchenne palsy. My opinion that I stated a year ago is unchanged. I do not expect significant progress from this point, and although surgery may be required for bony abnormalities, it will not increase strength in the future, and this will be a fixed, permanent deficit sustained during the traumatic delivery with shoulder dystocia using forceps, vacuum, and dystocia maneuvers.

This lesion will clearly need to be watched carefully from an orthopedic point of view, and from an occupational therapy point of view, to find ways of helping him get around the use of a limb dysfunction that has only flexion of the wrist and fingers and proximal weakness.

Because of his persistent developmental delays, particularly in language and pragmatic interaction, we have a more complicated situation now, as this is a child who may have a significant developmental delay with a differential diagnosis of central language disorder versus autistic spectrum disorder. He seems bright in the areas that you can test him. This clearly requires a further investigation and requires more in-depth psychoeducational evaluation to clarify the best approach. A small classroom strongly based in language with occupational therapy, physical therapy, and early education teachers would be ideal.

I strongly recommend a developmental evaluation with formalized testing to sort out these differences and to sort out what is the best approach to his developmental support.

In regard to the Erb-Duchenne palsy, he is going to need to be seen by an orthopedist,

Rehabilitation specialist or neurologist intermittently through the growing years, probably every 6 months, to age 6, and unless there are problems, maybe once a year thereafter. He clearly will need the services of a physiatrist and orthotic designer to sort out the best way to utilize those few muscles that have some function.

Aside from the cognitive impairments which have their own challenges, his global weakness of the arm, which is a permanent sensory and motor deficit, will require adaptations for his whole life. He will have difficulty doing bimanual tasks, any tasks with sustained activity of the arm needing to be over the head, ability to carry things with 2 hands, and participate in sports that require 2 hands, and all will be limiting his action.

As he becomes more aware of this deficit, it will cause more emotional turmoil as he gets older, and counseling and occupational therapy could be very helpful not only to teach activities and directions that can help him get around the use of 1 arm, but also handling the emotional stresses that he feels by being different. Clearly, the weakness will limit employability and would favor the need for more cognitive jobs than manual. Unfortunately, the finding of his cognitive abnormalities now make us concerned that that is likely to be another obstacle for him, and the presence of a weak arm leads to more restrictions. He may need surgery in the future depending on the stability of his joints. But it is unlikely that any surgery would be helpful to try to reanastomose nerves. He clearly is going to need a lot of equipment to help a 1-handed individual function better.

In essence, this young man has a permanent global injury to the brachial plexus of his left side affecting the whole plexus causing Horner syndrome from sympathetic abnormality. He is not going to recover from this at this point and will require adaptations to get around using his 1 hand. The findings of his cognitive impairments will further put a challenge on him and likely limit the job scope for him as he will have to depend more on cognitive function rather than motor function to make a living, and that may not be possible with his present psychological state.

Sincerely,

S. Charles Bean, MD

dd: 10/18/2009
dt: 10/19/2009
209001129109493/15974181
SCB

**EXHIBIT "D"**



## Occupational Therapy Evaluation

Patient Name: John Knight
Medical Record #: 00004623
Date of Birth: 03/07/06
Age: 3 years, 3 months

Date of Evaluation: 10-29-09
Referring Physician: Michael Colli
Therapist: Bonnie Wareham, OTR/L

### REASON FOR REFERRAL
John was referred to the clinic by Dr. Matthew Kaufman for an evaluation of developmental delays and difficulties related to Erb's Palsy.

### MEDICAL HISTORY and PRIOR LEVEL OF FUNCTION
Parents reported an uneventful pregnancy. John was 10 lbs. 10 oz.. at birth. He required forceps and suction for delivery. The umbilical cord was around his neck and his right humerus was fractured. The fracture was casted and healed without difficulty. He was jaundice. At two weeks of age he developed a fever and was treated with antibiotics. At that time he required lancing of a bruise from the forceps delivery that became necrotic. Parents reported they were told the infection was most likely a result of the necrotic tissue. At age 6 months John underwent nerve reconstruction surgery for Erb's Palsy. His physician was Dr. Kozin at Shriner's Hospital in Philadelphia. Parents reported two nerves were severed, 2 were tore and one was stretched. Nerve tissue from bicep and fingers were used to repair damaged nerves. No further surgery is planned. John has prescription lenses to correct a vision problem that was the result of Horner's Syndrome on the left side. He is followed by Dr. Aristimuno in York and Child's Eye in Mechanicsburg. He is patched and uses eye drops. Parents reported John received Early Intervention services beginning at age 18 months and continuing until August of 2009. He was enrolled in the Lincoln Intermediate Unit Preschool program for a brief period. Parents have been told John may fall on the Autism Spectrum. They are planning to have John evaluated by a Developmental Pediatrician at Hershey Medical Center. No appointment has been scheduled. John lives with his biological parents, younger brother and paternal grandparents.

### SUBJECTIVE:
Parents are concerned about John's delayed development including speech and language, self care and fine motor skills.

### OBJECTIVE:
Behaviors During Evaluation:
John willingly entered the assessment room and explored the room without difficulty. He switched toys and activities frequently. John resisted any attempt to structure his

activities. If the examiner or parents directed his activity he would move to another task. He used the expression "wow" during the evaluation. Parents reported he does not use other word to communicate. He will babble when playing and gestures to make his needs known. Eye contact is good.

Gross Motor:
John is able to move about his environment without difficulty. He is able to climb on to chairs and get up from the floor in a mature pattern. He is able to actively flex and abduct the left shoulder to approximately 90 degrees. When objects are placed in the left hand he is able to hold them. Passive range of motion of the left upper extremity is within normal limits.

Fine Motor:
John utilized a lateral grasp to hold a pencil in his right hand. He was able to make marks on a paper. He was not interested in manipulating small pegs with the right hand. John will use the left hand as an assist to hold objects. He showed little interest in fine motor activities.

Activities of Daily Living:
Parents reported John is able to remove his socks and shoes. He will remove his diaper and appears to be interested in toilet training. He has no clothing preferences or aversions. Parents describe John as a picky eater. His foods include chicken nuggets, french fries, peanut butter, roast beef, yogurt, pizza, any junk food, juice and Propel drink. He drinks from an open or sippy cup. He does not use a spoon. He will feed himself finger foods. No choking or gagging problems were reported. John sleeps through the night. He will entertain himself with books, watching Wow Wow Wubbsy and plays V-tech. Parents reported he likes to line up objects, especially coasters and crackers. John has limited opportunity at this time to play with other children. Parents reported he enjoys his younger brother.

**ASSESSMENT**:
John is a delightful young man who enjoys interacting with others and exploring his environment. His parents are committed to provide positive experiences that will facilitate his development. His attention span is limited and his fine motor development is delayed. He needs to develop one handed methods to complete self care activities. Splinting for the left upper extremity my improve functional abilities..

**RECOMMENDATION:**
I am recommending that the patient begin occupational therapy in order to address areas of concern.

**PLAN:**
Long Term Goals
John will improve functional abilities so that he is better able to participate in daily activities in his home and community.

Short Term Goals

Child will donn and doff pull over shirt with minimal assistance.
Child will donn and doff jacket with minimal assistance.
Child will pick up and put away toys on request with moderate assistance.
Child will attend to task for increasingly longer periods.
Child will identify by pointing 4 body parts.
Child will play a simple game to completion with less than 3 prompts to stay with task.
Child will assemble simple form board puzzle with minimal assistance.
Child will build a three cube tower.
Child will make vertical and circular scribble after demonstration.
Child will release small objects into a container with minimal assistance.
Child will position left hand to assist right hand when needed.
Child will place 10 large pegs in peg board.
Child will use a spoon for self feeding with moderate assistance for 25% of meal.
Child will wash and dry his hands with moderate assistance.
Child will tolerate left upper extremity splinting without difficulty.

FREQUENCY & DURATION:
Patient will be seen for 1x a week for 26 weeks.

If you have any questions about this report, please do not hesitate to call. Thank you for this referral.

[Signature] *Bonnie Mareham, MEd / OTR/L Lynne Heinrich, COTA*

**I certify the need for these services furnished under this plan of treatment and while under my care.**

_____          _____
**Physician Signature**                                                    **Date**

**Certification-**

**EXHIBIT "E"**

## ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN AND SMALLEY, P.C.

| | |
|---|---|
| **1900 DELANCEY PLACE** | **1710 SPRUCE STREET** |
| **PHILADELPHIA, PA 19103** | **PHILADELPHIA, PA 19103** |
| **(215) 735-1130** | **(215) 735-1130** |
| **(215) 735-2024 (Fax)** | **(215) 735-2211 (Fax)** |

## CONTINGENT FEE AGREEMENT/POWER OF ATTORNEY

**THIS IS A BINDING LEGAL DOCUMENT. READ IT CAREFULLY BEFORE YOU SIGN IT, AND KEEP A COPY FOR YOUR RECORDS.**

Dated: _10-3-06_

John Knight (JK)

John (JK)

I/we ~~Jonathan Knight~~ and Jacque L. Detrow, Parents and Natural Guardians of ~~Jonathan~~ N. Knight, II, (hereinafter "Client"), hereby constitute and appoint Howard J. Levin, Esquire of the law firm of Anapol, Schwartz, Weiss, Cohan, Feldman and Smalley, P.C. (hereinafter the "Anapol law firm"), to prosecute a claim against Drs. Orndorf, Besecker and Certified Nurse midwife Sarah Myers and Chambersburg Hospital, et al (Name of Defendants). The claimant/~~deceased~~ is ~~Jonathan~~ N. Knight, II and the accident, incident or occurrence happened on March 7, 2006.   John (JK)

The Client recognizes that the Anapol law firm has agreed, at Client's request, to accept this employment as Client's attorneys in this specific claim without payment of any retainer fee and without payment of an hourly fee for the investigation and legal work the Anapol law firm will perform.

The Client hereby agrees that out of whatever sum is obtained, either by settlement or verdict, to pay to the Anapol law firm as their fee, thirty-three and one third percent (33-1/3%), and from the balance then remaining, to pay the expenses of investigating and handling the case, including but not limited to: deposition costs, investigation and research fees, cost of witnesses, expert witnesses, copying, long distance calls, and trial exhibits. Pursuant to this agreement, the Anapol law firm shall represent Client and may institute suit on Client's behalf when and if the Anapol firm believes that suit should be instituted.

Client is aware that Theodore Oshman, Esquire, will receive a 33 1/3% percentage of the Anapol law firm's fee, for acting as referral/cooperating counsel. Client understands that the payment of the referral/cooperating counsel fee does not increase or affect the total contingent fee paid by the Client. The Client does not object to this division of fees.

Should this agreement be breached or otherwise terminated, the Anapol law firm shall be

entitled to immediate reimbursement of costs, disbursements, and expenses and any payment of the Anapol law firm's fee according to the herein agreed percentage of whatever offer of settlement the Anapol law firm may have negotiated to the date of breach or termination, or to payment of the Anapol law firm's fee based upon time actually expended at the prevailing rate of the attorneys at the Anapol law firm who worked on the file, whichever is greater. Said charges shall constitute a lien upon the file which shall remain in the possession of the Anapol law firm until discharge of the lien in full.

The Client hereby authorizes the Anapol law firm to pay medical bills on the Client's behalf directly to the physician(s) or hospital(s) concerned.

The Client hereby acknowledges that a copy of this document has been given to the Client and that the Client has been advised to retain it in Client's possession, and that the Client has read and understood the contents of this document before the Client has signed it.

SHOULD NO MONEY BE RECOVERED BY SUIT OR SETTLEMENT, SAID ATTORNEYS ARE TO HAVE NO CLAIM OF ANY KIND AGAINST ME/US FOR ANY PROFESSIONAL SERVICES RENDERED.

_____
Jacque L. Detrow

_____
Jonathan N. Knight
John (JK)

243 Hedge Row Drive
**ADDRESS**

243 Hedge Row Drive
**ADDRESS**

Chambersburg, PA 17201

Chambersburg, PA 17201

(Revised 7/27/05)



EXHIBIT "F"

## Cost Sheet for Knight v. US
Medical Records

| | | |
|---|---|---|
| 02/15/07 | Mediconnect.Net, Inc./Keystone Women's Care Summit Health Center | 100.50 |
| 02/16/07 | Mediconnect.Net, Inc./Shriners Hospital for Children | 25.00 |
| 02/16/07 | Mediconnect.Net, Inc./ Franklin County Pediatrics | 123.00 |
| 02/19/07 | Mediconnect.Net, Inc/ Keystone Woman's Care Summit Health Care | 25.00 |
| 02/19/07 | Mediconnect.Net, Inc/ Franklin County Pediatrics | 25.00 |
| 02/22/07 | Mediconnect.Net, Inc/ Keystone Women's Care Summit Health Center | 25.00 |
| 03/09/07 | Mediconnect.Net, Inc./ Shriners Hospital for Children | 25.00 |
| 04/18/07 | Mediconnect.Net, Inc./ Shriners Hospital for Children | 25.00 |
| 04/18/07 | Mediconnect.Net, Inc./ Shriners Hospital for Children | 75.72 |
| 06/25/07 | Mediconnect.Net, Inc./ Begona Aristumuno, MD | 50.20 |
| 04/08/08 | Mediconnect.Net, Inc./ Shriners Hospital for Children and Cumberland Valley Ortho | 132.64 |
| 04/08/08 | Mediconnect.Net, Inc./ Franklin Cty Pediatrics | 56.00 |
| 04/15/08 | Temple University Hospital | 82.29 |
| 04/17/08 | Chart One for Penn State Hershey | 110.56 |
| 04/23/08 | Mediconnect.Net, Inc./ Anne M. Tramontana, MD | 71.00 |
| 05/21/08 | Mediconnect.Net, Inc./ Temple Children's Hospital and Hershey Medical Center | 78.99 |
| 07/15/08 | Mediconnect.Net, Inc./ Shriners Hospital for Children | 94.51 |
| 11/26/08 | Mediconnect.Net, Inc./ Begona Aristumuno, MD | 81.00 |
| 09/04/09 | Mediconnect.Net, Inc./ Chambersburg Hospital | 160.79 |

**Total Costs for Medical Records     $1,367.20**

Filing Fees

| | | |
|---|---|---|
| 11/20/07 | Prothonotary of Franklin County | 80.50 |
| 11/20/07 | Sheriff - Service  Franklin County | 250.00 |
| 11/27/07 | Sheriff - Service Franklin County | 100.00 |
| 12/27/07 | REIMBURSED COSTS - Franklin County Sheriff | (198.95) |
| 10/22/08 | Filing - PACER | 9.12 |
| 10/22/08 | Clerk of US District Court - Eastern District | 250.00 |
| 10/28/08 | Clerk of US District Court - Eastern District | 350.00 |
| 11/04/08 | REIMBURSED COSTS - Clerk of US District Court - Eastern District | (350.00) |
| 01/12/09 | B & R Service of Process | 125.00 |
| 05/11/09 | PACER | 6.32 |
| 05/11/09 | PACER | 3.84 |
| 08/17/09 | PACER | 16.08 |
| 02/16/10 | PACER | .16 |
| 04/13/10 | PACER | .64 |

**Total Cost for Filing Fees        $642.71**

Experts

| | | |
|---|---|---|
| 10/12/07 | Steve A. Klein, MD | 3,000.00 |
| 04/17/08 | S. Charles Bean, MD | 750.00 |
| 06/20/08 | S. Charles Bean, MD | 525.00 |
| 03/26/09 | S. Charles Bean, MD | 73.00 |
| 03/30/09 | Donald Jennings, Ed.D | 1,850.00 |
| 05/27/09 | Scott H. Kozin, MD | 2,300.00 |
| 07/06/09 | Steven A. Klein, MD | 600.00 |
| 10/13/09 | Mona Yudkoff - Life Care Planner | 2,500.00 |
| 10/14/09 | S. Charles Bean, MD | 750.00 |
| 11/25/09 | Andrew Verzilli - Economic Expert | 1,800.00 |
| 01/06/10 | S. Charles Bean, MD | 200.00 |
| 01/22/10 | Cassandra Garcia, CNM | 3,300.00 |
| 01/24/10 | Steven A. Klein, MD | 3,600.00 |
| 04/02/10 | S. Charles Bean, MD | 300.00 |
| 04/09/10 | Steven A. Klein, MD | 1,000.00 |
| 04/23/10 | S. Charles Bean, MD | 37.50 |
| 04/26/10 | REIMBURSEMENT - Mona Yudkoff | (190.00) |

**Total Cost for Experts**          **$22,395.50**

Depositions

| | | |
|---|---|---|
| 11/19/09 | Darlanna Besecker | 434.60 |
| 11/19/09 | Sarah Myers | 520.80 |
| 11/20/09 | Dr. Thomas Orndorf | 791.10 |
| 12/14/09 | Jacque Knight, John N. Knight, Stella Knight | 470.50 |
| 12/23/09 | Courtney Rock Greenwood, RN | 515.20 |

**Total Cost for Depositions**          **$2,732.20**

Travel

| | | |
|---|---|---|
| 02/12/08 | Parking | 20.00 |
| 02/12/08 | Travel to Westbury, NY (256 miles) | 117.76 |
| 11/14/08 | Gasoline for trip to Harrisburg | 34.50 |
| 02/04/10 | Travel to Harrisburg, PA (11/14/08) | 76.06 |
| 09/26/09 | Travel to Chambersburg, PA | 159.00 |
| 09/29/09 | Travel to Harrisburg, PA and Carlisle, PA (8/28/09) | 178.20 |
| 10/14/09 | Tolls | 35.00 |
| 11/25/09 | Travel to Chambersburg, PA (11/19/09 and 11/20/09) | 345.60 |
| 12/14/09 | Tolls | 35.00 |
| 12/14/09 | Travel to Harrisburg, PA | 117.88 |

| | | |
|---|---|---|
| 12/23/09 | Travel to Chambersburg, PA | 175.08 |
| 04/19/10 | Travel to Harrisburg, PA | 124.88 |

**Total Costs for Travel**       **$1,418.96**

Couriers

| | | |
|---|---|---|
| 11/01/07 | FedEx | 16.39 |
| 11/01/07 | FedEx | 16.39 |
| 04/25/08 | Rapid Delivery | 22.50 |
| 04/30/08 | FedEx | 22.94 |
| 05/07/08 | FedEx | 25.75 |
| 05/07/08 | FedEx | 27.65 |
| 04/22/09 | FedEx | 12.01 |
| 07/01/09 | FedEx | 14.26 |
| 07/14/09 | FedEx | 15.86 |
| 11/09/09 | FedEx | 12.60 |
| 12/14/09 | Rapid Delivery | 52.50 |
| 01/26/10 | UPS | 25.00 |
| 02/01/10 | UPS | 25.00 |
| 04/06/10 | UPS | 25.00 |

**Total Costs for Couriers**       **$313.85**

Copies/Faxes

| | |
|---|---|
| Anapol, Schwartz | 930.50 |
| Howard J. Levin, Esq. | 354.50 |

**Total Costs for Copies**       **$1,285.00**

Miscellaneous

| | | |
|---|---|---|
| 02/12/08 | Meal with Plaintiffs' Expert | 111.19 |
| 12/12/08 | Textbooks/Research | 350.00 |

**Total Miscellaneous Costs**       **$461.19**

**TOTAL COSTS**       **$30,616.61**

**EXHIBIT "G"**

# Aetna Health Plans

## The Rawlings Company

Tuesday, February 12, 2008 11:16 am

Patient's Name: BABY DETROW
Member's Name: BABY DETROW
File Number: 06ASI0701927

Make Checks Payable To:
The Rawlings Company LLC
Attn: Jim McDermott
P.O. Box 2000
La Grange, KY 40031-2000

Paid Amount Subject to Change.
Please call (502) 814-2196
for the final paid amount.
Representative: Jim McDermott

| Trmt. Date In | Claim No. | Provider | ICD9 | ICD9 Desc. | CPT | CPT Desc. | Bill Amount | Paid Amount |
|---|---|---|---|---|---|---|---|---|
| 03/07/2006 | EL8121157H00 | David R. Brill | 959.2 | INJURY NOS, SHOULDER/UPPE W | 73060 | X-RAY EXAM OF HUMERUS, 2+ VIEWS | $31.00 | $9.90 |
| 03/07/2006 | EL8121157H00 | David R. Brill | 959.2 | INJURY NOS, SHOULDER/UPPE W | 73060 | X-RAY EXAM OF HUMERUS, 2+ VIEWS | $31.00 | $9.90 |
| 03/07/2006 | EBK5SQK91000 | Chambersburg Hospital | V30.00 | SINGLE LB, IN HOSPITAL, W | 170 | NURSERY | $1,956.00 | $893.16 |
| 03/07/2006 | E72352JMH00 | Anthony Bruno | 812.21 | FX HUMERUS SHAFT, CLOSED | 24500 | CLSD TRTMNT HMRL SHFT FX W/O MANIP | $700.00 | $341.16 |
| 03/07/2006 | E4PG8JYV0000 | Michael J. Colli | V30.00 | SINGLE LB, IN HOSPITAL, W | 99431 | INITIAL CARE, NORMAL NEWBORN | $135.00 | $74.70 |
| 03/07/2006 | EL8121157H00 | David R. Brill | 959.2 | INJURY NOS, SHOULDER/UPPE W | 73000 | X-RAY EXAM OF COLLARBONE, COMPLETE | $31.00 | $9.00 |
| 03/07/2006 | EL8121157H00 | David R. Brill | 959.2 | INJURY NOS, SHOULDER/UPPE W | 73060 | X-RAY EXAM OF HUMERUS, 2+ VIEWS | $31.00 | $9.90 |
| 03/08/2006 | E4PG8JYV0000 | Michael J. Colli | V30.00 | SINGLE LB, IN HOSPITAL, W | 99433 | FOLLOWUP CARE, NORMAL NEWBORN | $73.00 | $38.70 |
| 03/09/2006 | E4PMQNZ20000 | Matthew C. Kaufman | V30.00 | SINGLE LB, IN HOSPITAL, W | 99433 | FOLLOWUP CARE, NORMAL NEWBORN | $73.00 | $38.70 |
| 03/09/2006 | EL8121157H00 | David R. Brill | 959.2 | INJURY NOS, SHOULDER/UPPE W | 71010 | CHEST X-RAY, SINGLE VIEW, FRONTAL | $28.00 | $9.90 |
| 03/10/2006 | E4PMF3MF000 | Mary Jo Hall | V30.00 | SINGLE LB, IN HOSPITAL, W | 99231 | SUBSEQ HOSPITAL CARE, LOW COMPLEX | $68.00 | $28.80 |
| 03/10/2006 | EBK5QK91000 | Chambersburg Hospital | V30.00 | SINGLE LB, IN HOSPITAL, W | 171 | NURSERY/LEVEL I | $2,163.00 | $2,465.10 |
| 03/11/2006 | E4PG8JYV0000 | Michael J. Colli | V30.00 | SINGLE LB, IN HOSPITAL, W | 99231 | SUBSEQ HOSPITAL CARE, LOW COMPLEX | $68.00 | $28.80 |
| 03/12/2006 | E4PJLA2C0000 | Carolyn E. Kent | V30.00 | SINGLE LB, IN HOSPITAL, W | 99231 | SUBSEQ HOSPITAL CARE, LOW COMPLEX | $68.00 | $28.80 |
| 03/13/2006 | E4PJLA2C0000 | Carolyn E. Kent | V30.00 | SINGLE LB, IN HOSPITAL, W | 99238 | HOSPITAL DISCHARGE DAY MGMT, <30 MIN | $102.00 | $58.50 |
| 03/16/2006 | E20RWRM5000 | Matthew C. Kaufman | V29.9 | NB/INFANT CONDITION NOS W | 99213 | OFFICE/OUTPT VISIT, EST, EXP PROB | $76.00 | $43.20 |
| 03/21/2006 | E6RCG13B000 | Matthew C. Kaufman | 812.20 | FX HUMERUS NOS, CLOSED | 99211 | OFFICE/OUTPT VISIT, EST, MINIMAL | $32.00 | $17.10 |
| 03/22/2006 | EK81JPSZ000 | Anthony Bruno | V54.11 | AFTERCARE, HEAL TRAUM FX | 73092 | X-RAY EXAM OF ARM, INFANT, 2+ VIEWS | $74.00 | $28.09 |
| 03/22/2006 | EK81JPSZ000 | Anthony Bruno | V54.11 | AFTERCARE, HEAL TRAUM FX | 73092 | X-RAY EXAM OF ARM, INFANT, 2+ VIEWS | $74.00 | $28.09 |
| 03/28/2006 | EYB3YXFVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION N | 307 | LAB/UROLOGY | $36.00 | $24.30 |

Please write this number on your check: 06ASI0701927

Patient's Name: BABY DETROW
Member's Name: BABY DETROW
File Number: 06AS10701927

Make Checks Payable To:
The Rawlings Company LLC
Attn: Jim McDermott
P.O. Box 2000
La Grange, KY 40031-2000

Paid Amount Subject to Change.
Please call (502) 814-2196
for the final paid amount.
Representative: Jim McDermott.

| Trmt. Date In | Claim No. | Provider | ICD9 | ICD9 Desc. | CPT | CPT Desc. | Bill Amount | Paid Amount |
|---|---|---|---|---|---|---|---|---|
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 160 | R&B | $976.00 | $658.80 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 270 | MED-SUR SUPPLIES | $164.00 | $110.70 |
| 03/28/2006 | E1M03Z6SH00 | Matthew C. Kaufman | 780.6 | SYMPTOM, FEVER | 99222 | INITIAL HOSPITAL CARE, MOD COMPLEX | $192.00 | $93.60 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 250 | PHARMACY | $43.00 | $29.02 |
| 03/28/2006 | ECDCSRDJ7000 | Henry T. Ching | 959.09 | INJURY NOS, FACE AND NECK | 70486 | CT SCAN OF FACE, JAW | $194.00 | $63.00 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 351 | CT SCAN/HEAD | $1,213.00 | $818.77 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 305 | LAB/HEMATOLOGY | $36.00 | $24.30 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 352 | CT SCAN/BODY | $294.00 | $198.45 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 301 | LAB/CHEMISTRY | $83.00 | $56.02 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 306 | LAB/BACT-MICRO | $236.00 | $159.30 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 309 | LAB/OTHER | $85.00 | $57.37 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 258 | IV SOLUTIONS | $153.00 | $103.27 |
| 03/28/2006 | ETBZXYVSH00 | Chambersburg Hospital | 778.4 | DSTURB, TEMP REGULATION | 300 | LABORATORY | $266.00 | $179.55 |
| 03/29/2006 | EBPFZ3RAH00 | Milton S. Hershey Medical Cent | 780.6 | SYMPTOM, FEVER | A0425 | GROUND MILEAGE | $832.00 | $524.16 |
| 03/29/2006 | EBDFZ3XAH01 | Harry P. Bramley | 780.6 | SYMPTOM, FEVER | 99222 | INITIAL HOSPITAL CARE, MOD COMPLEX | $274.00 | $100.26 |
| 03/29/2006 | E1M03Z6SH00 | Matthew C. Kaufman | 780.6 | SYMPTOM, FEVER | 62270 | DIAGNOSTIC SPINAL FLUID TAP, LUMBAR | $401.00 | $63.90 |
| 03/29/2006 | E5Y6NCD5H00 | Milton S. Hershey Medical Cent | 778.1 | SCLEREMA NEONATORUM | 120 | ROOM-BOARD/SIM | $6,125.00 | $5,693.40 |
| 03/29/2006 | EBEFZ3RAH00 | Milton S. Hershey Medical Cent | 780.6 | SYMPTOM, FEVER | A0434 | SPECIALTY CARE TRANSPORT | $3,633.00 | $2,288.79 |
| 03/30/2006 | EBEPDSSH01 | Dan Thach Dam Nguyen | 767.9 | TRAUMA, BIRTH NOS | 70551 | MRI OF BRAIN | $412.00 | $128.14 |
| 03/30/2006 | PVWJDSX8800 | Dan Thach Dam Nguyen | 767.9 | TRAUMA, BIRTH NOS | 70551 | MRI OF BRAIN | $412.00 | $128.73 |

02/12/08 11:26:54   Anapol Schwartz   Rawlings Fax Server->   RAWLINGS FAX SERVER->   Page 004

**Aetna Health Plans**　　　　The Rawlings Company　　　　Tuesday, February 12, 2008 11:16 am

Patient's Name: BABY DETROW
Member's Name: BABY DETROW
File Number: 06ASI0701927

Make Checks Payable To:
The Rawlings Company LLC
Attn: Jim McDermott
P. O. Box 2000
La Grange, KY 40031-2000

Paid Amount Subject to Change.
Please call (502) 814-2196
for the final paid amount.
Representative: Jim McDermott

| Trmt. Date In | Claim No. | Provider | ICD9 | ICD9 Desc. | CPT | CPT Desc. | Bill Amount | Paid Amount |
|---|---|---|---|---|---|---|---|---|
| 03/31/2006 | EE8YZJ580H00 | Fred G. Fedok | 784.2 | SWELLING IN HEAD/NECK | 99252 | INITIAL INP'T CONSULT, EXP PROB | $170.00 | $65.86 |
| 04/03/2006 | EBDPZ3X0AH01 | Harry P. Bramley | 780.6 | SYMPTOM, FEVER | 99238 | HOSPITAL DISCHARGE DAY MGMT, <30 MIN | $164.00 | $57.90 |
| 04/06/2006 | EZHFFWY9000 | Matthew C. Kaufman | V20.2 | ROUTINE CHILD HEALTH EXAM | 99391 | PREVENTIVE CHECKUP, EST, INFANT | $62.00 | $62.00 |
| 04/19/2006 | EB8V41X41000 | Kelly Vanderhave | 767.6 A | INJURY, BRACHIAL PLEXUS | 99203 | OFFICE/OUTP'T VISIT, NEW, DETAILED | $141.00 | $57.10 |
| 06/01/2006 | E4G19OXTR00 | Christianne Schoedel | 368.02 | AMBLYOPIA, DEPRIVATION | 92012 | INTERMED EYE EXAM, ESTAB PATIENT | $80.00 | $52.20 |
| 09/14/2006 | EF7B8PHK800 | Kathleen Reeves | 953.4 | INJURY BRACHIAL PLEXUS | 99222 | INITIAL HOSPITAL CARE, MOD COMPLEX | $240.00 | $90.51 |
| 09/14/2006 | EK6VYRQSR00 | Temple University Childrens M | 767.6 | INJURY, BRACHIAL PLEXUS | 278 | SUPPLY/IMPLANTS | $4,559.94 | $501.59 |
| 09/14/2006 | EK6VYRQSR00 | Temple University Childrens M | 767.6 A | INJURY, BRACHIAL PLEXUS | 120 | ROOM-BOARD/SIM | $5,903.00 | $1,883.00 |
| TOTALS | | | | | | | $33,193.94 | $16,434.59 |

EXHIBIT "H"



Howard Levin <hlevin0711@gmail.com>

# Knight Case

1 message

**Howard Levin <hlevin0711@gmail.com>**
To: jwm@rawlingscompany.com

**Wed, May 19, 2010 at 2:26 PM**

Mr. McDermott:

This will confirm our conversation wherein you agreed to settle my client's lien for a 25% reduction. The total amount due is now $13,825.94.

Thank you for your cooperation in this matter.

--
Howard J.Levin Esq.
2 Liberty Place
50 South 16th St.
28th Floor
Philadelphia, Pa. 19102

(w) 215 299 4359
(c) 215 285 9147
(f)  215 574 1200

**EXHIBIT "I"**

 

## FINANCIAL AGREEMENT

Client's Name: _John Knight_        Agency #: _____

### CONSENT TO BILL:
- I agree that the information given by me in applying for payment and service is correct.
- I understand that payment for these services may be made from Federal and State funds.
- I understand that I may be criminally liable for any false statements that I make, any false documents I provide, or any information that I conceal.
- I authorize Easter Seals to release medical and any other information to payers needed for payment of any bills.

### AGREEMENT FOR PAYMENT:
- I agree to pay a fee of $25.00 if I cancel an appointment in less than 2 hours of our appointment or we do not show for our appointment.
- I agree to pay Easter Seals Central Pennsylvania for services rendered.
- I agree to pay any unmet insurance deductibles and/or co-payments.
- I agree that I will sign over any checks that I receive from the insurance company. Payment for services may be made by either personal check or by endorsing the insurance payment by writing, "Pay to the order of Easter Seals" with your authorized signature.
- I agree that I will be responsible for all charges, in the event there is no insurance coverage.
- I understand that I will receive a monthly bill and agree that I will pay it in full within 30 days.
- I understand that Easter Seals may use a collection agency to collect any unpaid bills.
- I have been informed that charges for services are available upon request by contact the Home Nursing Agency Business Office.
- The amounts listed below are based on information supplied from the insurance companies and other payment sources that I have given to Easter Seals Central Pennsylvania.
- The total amount of anticipated charges will depend on the frequency and type of service provided.
- I agree that if I exhaust all of my insurance benefits and continue therapy I accept full financial responsibility.

| Payer Source | Policy Deductible | Anticipated % Coverage | Anticipated Co-Pay | Anticipated Self Pay |
|---|---|---|---|---|
| | · | | 55.00 | 55.00 - 50% less 27.50 |
| | | | | |
| | | | | |
| | | | | |
| Self-pay | $0.00 | $0.00 | | $25.00 No-Show Fee (if applicable) |

I understand that Easter Seals may be affiliated with other health care organizations including Altoona Regional Health Systems. I may contact the Director of Compliance at 1-800-992-2554 for detailed affiliation and ownership information.

### CONSENT/AGREEMENT SIGNATURE

_Jacqued J. Knight_    _Mother_    _10/1/09_        _____    __/__/__
Signature of Responsible Party    Relationship to Client    DATE     Signature of 2nd Parent    DATE

_____       _____    __/__/__
Billing Address (if different than client)          Witness          DATE

CHRISTIANNE SCHOEDEL, M.D.
BEGONA ARISTIMUNO, M.D.
360 ST. CHARLES WAY
YORK, PA, 17402
717-757-2020 FAX:717-747-5999


JOHN N KNIGHT II
12 FIELD CIRCLE
CHAMBERSBURG, PA 17202

| | |
|---|---|
| Statement Date : | 04-02-2010 |
| Last Payment : | 03-08-2010 |
| Account Number : | 7915 |
| Phone Number : | 717-404-6224 |
| **Amount Due** : | **$25.00** |

## Statement of Account
====================

| Date | Description | Charge | Payment | Courtesy/ Disallow | Patient Balance |
|---|---|---|---|---|---|
| 03-08-2010 | COMPREHENSIVE EST | 125.00 | | | |
| 03-08-2010 | SENSORIMOTOR EXAM | 90.00 | | | |
| 03-08-2010 | REFRACTION | 45.00 | | | |
| 04-02-2010 | UNITED HEALTHCARE | | 127.75 | 32.25 | |
| | REFRACTION NOT COVERED BY YOUR INSURANCE | | | | |
| 04-02-2010 | Patient payment | | ~~$5.00~~ | 20.00 | |
| | | | | | 25.00 |

Account # 7915                    ==========
**Please PAY this amount :**        ~~$25.00~~

Current        25.00

BALANCE IS DUE ON RECEIPT.  A $10 REBILL FEE WILL BE ADDED
TO YOUR ACC'T EACH MONTH UNTIL THE BALANCE IS PAID IN FULL


## Future Appointments

| Date | Day | Time | Min. | Provider | Office |
|---|---|---|---|---|---|
| 09-08-2010 | WEDNESDAY | 11:00 AM | 30 | BA | 1 |

5491



# A Child's Eyes

4840 E Trindle Rd.
Mechanicsburg PA 17050
(717) 901-EYES

| DATE: | 05/21/2009 | D.O.B | | DR. | |
|---|---|---|---|---|---|
| NAME | Knight, John | | 1 PH | 404-6224 | |
| ADDR | 3384 Landmark Ct. | | 2 PH | | |
| CSZIP | Chambersburg, PA 17201 | | PARENT | | |
| EMAIL | | | REFRL | | |
| Diagnosis: | | | | | |
| **Special Inst:** | cable 95mm to curve | | | | |

| Opt | DC | Insp | | Del | | Call | | Lens | | Frame | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| | SPH | CYL | AXIS | PRISM | BASE | PD FAR | PD NEAR |
|---|---|---|---|---|---|---|---|
| RIGHT | +00.00 | | | | | 26.0 | |
| LEFT | +05.50 | +00.50 | 180 | | | 26.5 | |
| | ADD | SEG HT | OC | DEC | INSET | VERTEX | |
| RIGHT | | | | | | | |
| LEFT | | | | | | | |

| Frame | 140.00 |
|---|---|
| Lens | 100.00 |
| Tint | *65.00* |
| Prism | |
| CLs | |
| ARC | |
| Clip | |
| Sport | |
| Patch | |
| Book | |
| Misc | |

| A | B | ED | DBL | C | FPD | | Frame | Whole |
|---|---|---|---|---|---|---|---|---|
| 46 | | | 17 | | | | Manu | REM |
| OD Lens Mat'l | Lens Type | Color/Tint | Coatings | | | | Name | Converse Rebound |
| Polycarbonate | Single Visi | Clear | Factory Coated | | | | Color | Slate |
| OS Lens Mat'l | Lens Type | Color/Tint | Coatings | | | | Size | 46/17 |
| Polycarbonate | Single Vision | Clear | Tegra | | | | Temple | cables |
| Frame Material | Lab | LAB INFO | | | | | | |
| Metal | K-Optical | Frame Enclosed | | | | | | |

| Sub | 240.00 | *305* |
|---|---|---|
| Disc | 25.00 | |
| Tax | | |
| Tot | 215.00 | |
| Pmts | 20.00 | |
| Bal | 195.00 | |

*65.00*
*$260.00*

# Warranty Information
**100% Accuracy Guarantee or your money back!**
**Frames-** 1-year unlimited warranty, for any reason except loss.
**Lenses-** 1-year warranty on lenses except for loss.
First time they are replaced at no charge.
The second replacement is at ½ off retail charge.
The third replacement (if needed) would be at
no charge again.

**Warranty Record:**

| Pt Name: | Knight, John | Subscr Name: | |
|---|---|---|---|
| Insurance Type: | | Authorized by: | |
| Subscr DOB: | | Subscr ID #: | |

## Payment History:

| No. | Date | Type | Amount |
|---|---|---|---|
| 1 | 05/21/2009 | V/M | 20.00 |

5965

# A Child's Eyes
4840 E Trindle Rd.
Mechanicsburg PA 17050
(717) 901-EYES

| DATE: | 10/30/2009 | D.O.B | | DR. | Aristimuno |
|---|---|---|---|---|---|
| NAME | Knight, John | | | 1 PH | 404-6224 |
| ADDR | 3384 Landmark Ct. | | | 2 PH | |
| CSZIP | Chambersburg, PA 17201 | | | PARENT | |
| EMAIL | | | | REFRL | |
| Diagnosis: | | | | | |
| **Special Inst:** | | | | | |

| Opt | DC | Insp | Del | Call | Lens | Frame |
|---|---|---|---|---|---|---|

| | SPH | CYL | AXIS | PRISM | BASE | PD FAR | PD NEAR | | Frame | 70.00 |
|---|---|---|---|---|---|---|---|---|---|---|
| RIGHT | +00.00 | | | | | 27.0 | | | Lens | 165.00 |
| LEFT | +05.50 | +00.50 | 180 | | | 27.0 | | | Tint | |
| | ADD | SEG HT | OC | DEC | INSET | VERTEX | | | Prism | |
| RIGHT | | | | | | | | | CLs | |
| LEFT | | | | | | | | | ARC | |

| A | B | ED | DBL | C | FPD | | Frame | Whole | | Clip | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 45 | | | 20 | | | | Manu | Candy Shop | | Sport | |
| Lens Mat'l | | Lens Type | | Color/Tint | | Coatings | Name | undefined Caramel | | Patch | |
| Polycarbonate | | Single Vision | | Transitions V | | Factory Coated | Color | 1 | | Book | |
| Frame Material | | Lab | | LAB INFO | | | Size | 45/20 | | Misc | |
| Metal | | K-Optical | | Frame Enclosed | | | Temple | cable 85mm to curve | | | |

| Sub | 235.00 |
|---|---|
| Disc | |
| Tax | |

| Tot | 235.00 |
|---|---|
| Pmts | 235.00 |
| Bal | 0.00 |

# Warranty Information
## 100% Accuracy Guarantee or your money back!
**Frames-** 1-year unlimited warranty, for any reason except loss.
**Lenses-** 1-year warranty on lenses except for loss.
First time they are replaced at no charge.
The second replacement is at ½ off retail charge.
The third replacement (if needed) would be at
no charge again.

Warranty Record:

| Pt Name: | Knight, John | Subscr Name: | |
|---|---|---|---|
| Insurance Type: | | Authorized by: | |
| Subscr DOB: | | Subscr ID #: | |

## Payment History:

| No. | Date | Type | Amount |
|---|---|---|---|
| 1 | 10/30/2009 | V/M | 235.00 |

**6457**

A Child's Eyes

4840 E Trindle Rd.
Mechanicsburg PA 17050
(717) 901-EYES

| DATE: | 05/04/2010 | D.O.B | | DR. | Aristimuno |
|---|---|---|---|---|---|
| NAME | Knight, John | | | 1 PH | 404-6224 |
| ADDR | 3384 Landmark Ct. | | | 2 PH | |
| CSZIP | Chambersburg, PA 17201 | | | PARENT | |
| EMAIL | | | | REFRL | |
| Diagnosis: | | | | | |
| Special Inst: | OD 2.0 new frames under under warranty | | | | |

| Opt | DC | Insp | | Del | | Call | | Lens | | Frame | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| | SPH | CYL | AXIS | PRISM | BASE | PD FAR | PD NEAR | | Frame | |
|---|---|---|---|---|---|---|---|---|---|---|
| RIGHT | +00.00 | | | | | 27.5 | | | Lens | 165.00 |
| LEFT | +04.00 | +00.50 | 090 | | | 26.5 | | | Tint | |
| | ADD | SEG HT | OC | DEC | INSET | VERTEX | | | Prism | |
| RIGHT | | | | | | | | | CLs | |
| LEFT | | | | | | | | | ARC | |

| A | B | ED | DBL | C | FPD | | Frame | POF | | Clip | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 46 | | | 17 | | | | Manu | Candy Shop | | Sport | |
| Lens Mat'l | | Lens Type | | Color/Tint | | Coatings | Name | Candy Shop Caramel | | Patch | |
| Polycarbonate | | Single Vision | | Transition | | Factory Coated | Color | 1 | | Book | |
| Frame Material | | Lab | | LAB INFO | | | Size | 46/17 | | Misc | |
| Metal | | K-Optical | | Frame Enclosed | | | Temple | | | | |

| Sub | 165.00 |
|---|---|
| Disc | |
| Tax | |
| Tot | 165.00 |
| Pmts | 20.00 |
| Bal | 145.00 |

## Warranty Information
**100% Accuracy Guarantee or your money back!**
**Frames-** 1-year unlimited warranty, for any reason
except loss. A $10.00 shipping charge will be added for
each replacement.
**Lenses-** 1-year warranty on lenses except for loss.
First time lenses are replaced at no charge.
The second replacement is at ½ off retail charge.
The third replacement (if needed) would be at
no charge again.

Warranty Record:

| Pt Name: | Knight, John | | Subscr Name: | |
|---|---|---|---|---|
| Insurance Type: | | | Authorized by: | |
| Subscr DOB: | | Subscr ID #: | | |

## Payment History:

| No. | Date | Type | Amount |
|---|---|---|---|
| 1 | 05/04/2010 | V/M | 20.00 |



# Children's Hospital

**Department of Pediatrics**     Penn State Children's Hospital                     Tel: (717) 531-8414
Division of Human Genetics,     Penn State Milton S. Hershey Medical Center     Fax: (717) 531-0276
Growth & Development            Department of Pediatrics, H085
                                500 University Drive, P.O. Box 850
                                Hershey, PA  17033-0850

Dear Parent,

Thank you for your recent inquiry requesting evaluation of your child's developmental skills, temperament, attention focus, or school progress. In order to best serve you and your child, we are requesting additional information about your concerns and also summaries from programs or professionals who have provided treatment in the past.

When we receive the completed forms, they will be carefully reviewed and an appointment in the appropriate clinic will be scheduled. Our staff includes: Dr. Jeanette Ramer, who is a Developmental Pediatrician/Geneticist and Mr. Mark Domoto, a childhood education specialist. There are several other professionals available, depending on the specific evaluation required. Our resources include physical therapists, occupational therapists, a clinical psychologist and speech therapists for patients that may require these services. These consultations would be done after the initial evaluation after discussion with you.

Your child's appointment will be scheduled through the Pediatric Genetics/Development office at 717/531-8414. Information about expected length of visit, approximate cost, the specific health care professionals you will be seeing, as well as the actual appointment date and time will be provided when the appointment is scheduled. We ask that you arrive twenty (20) minutes prior to tour initial appointment in order to register your child in a timely fashion.

We understand that finances may be a concern, and suggest that you check with your health insurance carrier to ask whether your insurance policy will cover this evaluation. This would be especially relevant if you belong to an HMO (i.e., Gateway, Amerihealth Mercy, Unison, Keystone, Health America, or Aetna). A referral from your primary care physician is required so that your insurance carrier will accept our charges. Please understand that this is for your protection, as you may be responsible for charges not covered by your insurance. There is an attached price list (included on the INFORMATION FOR YOUR INSURANCE COMPANY form) that includes insurance code information.

If you have any questions regarding the appointment, please call Dr Ramer's office at 717/531-8414.

Sincerely,

*Jeanette C. Ramer*

Jeanette C. Ramer, M.D.
Developmental Pediatrician

*Mark Domoto M.Ed.*

Mark Domoto, M. Ed.
Early Childhood Education
Developmental Clinic Manager

INSURANCE INFORMATION
DEVELOPMENTAL PEDIATRICS CLINIC VISITS

Your child will be evaluated by a pediatrician with expertise in child development rehabilitation and an education behavior management specialist. Resident physicians (pediatricians in training) may participate in the visit as well.

The initial comprehensive visit fee includes extensive review of records (completed prior to the visit), interview of you and your child, physical examination and discussion of initial diagnostic impression, and recommendations. A comprehensive report will be sent to your physician and to you.

If other professional assessments are scheduled for the day of the evaluation, you will be informed in advance so that you may check with your insurance carrier to confirm coverage or to obtain pre-authorization.

If needed, additional testing (psychoeducational assessment, medical testing, etc.) will be scheduled at a future appointment and are not included in the initial comprehensive consult fee.

<u>Developmental Pediatrician</u>

| | | |
|---|---|---|
| Initial Comprehensive Consult Fee | $376 | Insurance Code 99245 |
| Follow-up visit costs range from | $77 – $247 | Insurance Code 99211 – 99215 |

<u>Educational Specialist</u>

| | | |
|---|---|---|
| Assessment | $57-$59 (15 minutes) | Insurance Code 8696150-8696151 |
| Intervention | $55 -$81 (15 minutes) | Insurance Code 8696152-8696155 |

(Fees are subject to change without notice)

9/19/08

Easter Seals Central PA
501 Valley View Blvd.
Altoona, PA 16602
(814)944-5014

| ACCOUNT NUMBER | BILLING DATE |
|---|---|
| 00004623 | 01/26/10 |

| PATIENT NAME |
|---|
| John Knight |

John Knight
12 Fields Circle
Chambersburg, PA 17201

| 110.00 | ◄ | PAY THIS AMOUNT |
|---|---|---|

*Above amount reflects outstanding patient balance or payment plan amount due*

$ _____
AMOUNT ENCLOSED

## PLEASE RETURN THIS PORTION WITH YOUR PAYMENT

Easter Seals Central PA

| DATE | DESCRIPTION OF SERVICE | DOCTOR | TOTAL | PAT PORTION | PAT PAYMENT APPLIED | PATIENT DUE |
|---|---|---|---|---|---|---|
| 11/17/09 | 97530   Therapeutic Activities | Wenrick | $126.00 | $27.50 | | $27.50 |
| 11/24/09 | 97530   Therapeutic Activities | Wenrick | $84.00 | $27.50 | | $27.50 |
| 12/01/09 | 97530   Therapeutic Activities | Wenrick | $84.00 | $27.50 | | $27.50 |
| 12/29/09 | 97530   Therapeutic Activities | Wenrick | $84.00 | $27.50 | | $27.50 |

| TOTAL PATIENT DUE | $110.00 |
|---|---|

| Total Charges | $378.00 |
|---|---|
| Total Patient Payments since last Bill | $0.00 |
| Total Carrier Payments since last Bill | $0.00 |

| INSURANCE PORTION | PATIENT PORTION | ON ACCOUNT CREDIT | TOTAL OUTSTANDING |
|---|---|---|---|
| $268.00 | $110.00 | −   $0.00 | $378.00 |
| CURRENT | 30 DAY | 60 DAY | 90 DAY |
| $84.00 | $84.00 | $210.00 | $0.00 |

**EXHIBIT "J"**

Jackson National Life Insurance Company®

(800-765-6583) HOME OFFICE: 1 Corporate Way, Lansing, MI 48951

Fixed Annuity

# MAX One XL Flexible Premium Deferred Fixed Annuity (Form A650CG-2)

## Hypothetical Illustration

**Prepared For:**

John Knight - Age 4 - Male (Owner)

| Qualification | |
|---|---|
| Non-Qualified | |

| Initial Premium | |
|---|---|
| $500,000 | |

**Prepared By:**

Bill Montgomery

| Date: | |
|---|---|
| May 14, 2010 | |

| State: | |
|---|---|
| Pennsylvania | |

| Features and Benefits | |
|---|---|
| First-Year Interest Rate (including bonus) | 5.10% |
| Base Interest Rate | 3.10% |
| Withdrawal Charge Period | 6 years |
| Guaranteed Minimum Interest Rate (Years 2-10) | 2.00% |
| (Years 11+) | 3.00% |
| Terminal Illness Benefit | Yes |

Product availability, rider and features are subject to state approval.

NOT FDIC/NCUA INSURED   NOT BANK/CU GUARANTEED   MAY LOSE VALUE   NOT A DEPOSIT   NOT GUARANTEED BY ANY FEDERAL AGENCY

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your Independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY Form A650CG-2

XADV13436 01/10

Page 1 of 12

## W.V. Montgomery, Jr.

To:            hlevin0711@gmail.com
Subject:       Annuity illusgration

HI Howard:  I'm attaching an illustration for John Knight with Jackson National.  They are
rated A+ with A.M. Best.

The illustration shows 5.01% the first year, and 3.01 2 years through 6. The minimum rate
is 2% through year 10. From year 11 and beyond the monimum rate if 3%.  Of course
interests vary and they could be higher than the guarantee column.

The owner can withdraw 10% free aach year.  Any withdrawal amont above the free 10 % there
is a 6% cost decrasing to 0 after 6 years. After that the whole amount can be withdrawn
with no cost.

Page 4 illustrates  IRAs  - not applicable.

The Tabular detail page 7 shows the guarneed column as h4e "walkaway" amont after all
costs.

We're assuming there will be no withdrawals during the life of the annuity, although I
really dont know how much or when there will be a need to withdraw from this.

Of course, all accumulations are on a tax deferred basis.

There are sill questions about who will be the owner (or owners).

At any time in the future the annuity can be chabged to a guaranteed life income.

I rrust this covers the major high points.  Please let me know if you have any questios.

1

# Montgomery Associates, Inc.

W.V. Montgomery, Jr., President
Certified Financial Planner
Certified Senior Advisor

# FACSIMLE TRANSMITTAL SHEET

**TO: Howard Levin**

**AT: 2 Liberty Place**

**NO: 215-2̶8̶̶-̶̶5̶̶1̶̶7̶**   *(handwritten: 574-1200)*

**FROM:  Bill Montgomery**

**AT: Montgomery Associates, Inc.**

**FAX NO:     610 495-0535**

**DATE:     5/14/10**

**Hi Howard:  I couldn't get the attached illustration to get to you b e-mail. I hope this is OK.  I've sent a copy to John Knight.   Let me hear from you if you have any questions.**

This transmission is 14 pages including this page.
Please call the sender at (610) 495-5773 if there was a problem receiving this transmission.  Thank you.

518 Kimberton Road No. 335 • Phoenixville, PA 19460 • Tel (610) 495-5773 • Fax (610) 495-0535
Web Site: www.seniormoneyanswers.com • E-Mail: wmontgomeryjr@cs.com

## W.V. Montgomery, Jr.

From: Howard Levin [hlevin0711@gmail.com]

Sent: Wednesday, April 28, 2010 4:07 PM

To: wmontgomeryjr@cs.com

Cc: cworld_309@hotmail.com

Subject: Knight

Bill:

My contact info is below.

Please send me the proposed plans so I can review them for court approval.

--
Howard J.Levin Esq.
2 Liberty Place
50 South 16th St.
28th Floor
Philadelphia, Pa. 19102

(w) 215 299 4359
(c) 215 285 9147
(f) 215 574 1200

# Statement to be Signed

I (we) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The registered representative has told me they are not guaranteed.

_____    _____
Signature Owner/Applicant                    Date

I certify that this illustration has been presented to the applicant and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration.

_____    _____
Signature Registered Representative        Date

_____
Representative Number

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY FORM A640-OA2

XADV13436 01/10

## Tabular Detail

Non-Guaranteed Values are based on first year rates and renewal rates in effect at the time of illustration.

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers either fixed products with different features, benefits and charges. Please contact your independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY Form AN500-CX

# Tabular Detail

| End of Contract Year | Age | Premium | Guaranteed Values | | Non-Guaranteed Values | |
|---|---|---|---|---|---|---|
| | | | Withdrawal Value | Accumulated Value | Withdrawal Value | Accumulated Value |
| 70 | 74 | 0.00 | 3,700,051.33 | 3,700,051.33 | 4,035,679.91 | 4,035,679.91 |
| 71 | 75 | 0.00 | 3,811,052.87 | 3,811,052.87 | 4,156,750.31 | 4,156,750.31 |
| 72 | 76 | 0.00 | 3,925,384.45 | 3,925,384.45 | 4,281,452.82 | 4,281,452.82 |
| 73 | 77 | 0.00 | 4,043,145.99 | 4,043,145.99 | 4,409,896.40 | 4,409,896.40 |
| 74 | 78 | 0.00 | 4,164,440.37 | 4,164,440.37 | 4,542,193.30 | 4,542,193.30 |
| 75 | 79 | 0.00 | 4,289,373.58 | 4,289,373.58 | 4,678,459.10 | 4,678,459.10 |
| 76 | 80 | 0.00 | 4,418,054.78 | 4,418,054.78 | 4,818,812.87 | 4,818,812.87 |
| 77 | 81 | 0.00 | 4,550,596.43 | 4,550,596.43 | 4,963,377.25 | 4,963,377.26 |
| 78 | 82 | 0.00 | 4,687,114.32 | 4,687,114.32 | 5,112,278.57 | 5,112,278.57 |
| 79 | 83 | 0.00 | 4,827,727.75 | 4,827,727.75 | 5,265,846.93 | 5,265,846.93 |
| 80 | 84 | 0.00 | 4,972,559.58 | 4,972,559.58 | 5,423,816.34 | 5,423,816.34 |
| 81 | 85 | 0.00 | 5,121,726.37 | 5,121,726.37 | 5,586,324.83 | 5,586,324.83 |
| 82 | 86 | 0.00 | 5,275,388.46 | 5,275,388.46 | 5,753,914.57 | 5,753,914.57 |
| 83 | 87 | 0.00 | 5,433,650.11 | 5,433,650.11 | 5,926,532.01 | 5,926,532.01 |
| 84 | 88 | 0.00 | 5,596,659.62 | 5,596,659.62 | 6,104,327.97 | 6,104,327.97 |
| 85 | 89 | 0.00 | 5,764,559.41 | 5,764,559.41 | 6,287,457.81 | 6,287,457.81 |
| 86 | 90 | 0.00 | 5,937,496.19 | 5,937,496.19 | 6,476,081.54 | 6,476,081.54 |
| 87 | 91 | 0.00 | 6,115,621.07 | 6,115,621.07 | 6,670,363.99 | 6,670,363.99 |
| 88 | 92 | 0.00 | 6,299,089.71 | 6,299,089.71 | 6,870,474.91 | 6,870,474.91 |
| 89 | 93 | 0.00 | 6,488,062.40 | 6,488,062.40 | 7,076,589.16 | 7,076,589.16 |
| 90 | 94 | 0.00 | 6,662,704.27 | 6,682,704.27 | 7,288,886.83 | 7,288,886.83 |
| 91 | 95 | 0.00 | 6,883,165.40 | 6,883,165.40 | 7,507,563.44 | 7,507,563.44 |
| Total | | $500,000 | | | | |

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY Form AF806.2-3

XADV13436.01/10

## Tabular Detail

| End of Contract Year | Age | Premium | Guaranteed Values | | Non-Guaranteed Values | |
|---|---|---|---|---|---|---|
| | | | Withdrawal Value | Accumulated Value | Withdrawal Value | Accumulated Value |
| 47 | 51 | 0.00 | 1,874,785.48 | 1,874,785.46 | 2,044,845.71 | 2,044,845.71 |
| 48 | 52 | 0.00 | 1,931,029.04 | 1,931,029.04 | 2,109,191.08 | 2,109,191.08 |
| 49 | 53 | 0.00 | 1,988,959.91 | 1,988,959.91 | 2,169,376.82 | 2,169,376.82 |
| 50 | 54 | 0.00 | 2,048,628.71 | 2,048,628.71 | 2,234,458.12 | 2,234,458.12 |
| 51 | 55 | 0.00 | 2,110,087.57 | 2,110,087.57 | 2,301,491.85 | 2,301,491.85 |
| 52 | 56 | 0.00 | 2,173,390.20 | 2,173,390.20 | 2,370,536.82 | 2,370,536.82 |
| 53 | 57 | 0.00 | 2,238,591.90 | 2,238,591.90 | 2,441,652.72 | 2,441,652.72 |
| 54 | 58 | 0.00 | 2,305,749.66 | 2,305,749.86 | 2,514,902.30 | 2,514,902.30 |
| 55 | 59 | 0.00 | 2,374,922.15 | 2,374,922.15 | 2,590,349.37 | 2,590,349.37 |
| 56 | 60 | 0.00 | 2,446,169.81 | 2,446,169.81 | 2,668,059.85 | 2,668,059.85 |
| 57 | 61 | 0.00 | 2,519,554.91 | 2,519,554.91 | 2,748,101.64 | 2,748,101.64 |
| 58 | 62 | 0.00 | 2,595,141.56 | 2,595,141.56 | 2,830,544.69 | 2,830,544.69 |
| 59 | 63 | 0.00 | 2,872,995.80 | 2,872,995.80 | 2,915,461.03 | 2,915,461.03 |
| 60 | 64 | 0.00 | 2,753,185.88 | 2,753,185.88 | 3,002,824.87 | 3,002,824.87 |
| 61 | 65 | 0.00 | 2,835,781.25 | 2,835,781.25 | 3,093,012.61 | 3,093,012.61 |
| 62 | 66 | 0.00 | 2,920,854.68 | 2,920,854.68 | 3,185,802.99 | 3,185,802.99 |
| 63 | 67 | 0.00 | 3,008,480.32 | 3,008,480.32 | 3,281,377.08 | 3,281,377.08 |
| 64 | 68 | 0.00 | 3,098,734.73 | 3,098,734.73 | 3,379,818.39 | 3,379,818.39 |
| 65 | 69 | 0.00 | 3,191,696.78 | 3,191,696.78 | 3,481,212.94 | 3,481,212.94 |
| 66 | 70 | 0.00 | 3,287,447.68 | 3,287,447.68 | 3,585,649.33 | 3,585,649.33 |
| 67 | 71 | 0.00 | 3,386,071.11 | 3,386,071.11 | 3,693,218.81 | 3,693,218.81 |
| 68 | 72 | 0.00 | 3,487,653.24 | 3,487,653.24 | 3,804,015.38 | 3,804,015.38 |
| 69 | 73 | 0.00 | 3,592,282.84 | 3,592,282.84 | 3,918,135.84 | 3,918,135.84 |

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE: XI, FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY Form M660CO-5

## Tabular Detail

| End of Contract Year | Age | Premium | Guaranteed Values | | Non-Guaranteed Values | |
|---|---|---|---|---|---|---|
| | | | Withdrawal Value | Accumulated Value | Withdrawal Value | Accumulated Value |
| 24 | 28 | 0.00 | 949,938.33 | 949,938.33 | 1,036,106.45 | 1,036,106.45 |
| 25 | 29 | 0.00 | 978,436.48 | 978,436.48 | 1,067,189.64 | 1,067,189.64 |
| 26 | 30 | 0.00 | 1,007,789.57 | 1,007,789.57 | 1,099,205.33 | 1,099,205.33 |
| 27 | 31 | 0.00 | 1,038,023.26 | 1,038,023.26 | 1,132,181.49 | 1,132,181.49 |
| 28 | 32 | 0.00 | 1,069,163.96 | 1,069,163.96 | 1,166,146.94 | 1,166,146.94 |
| 29 | 33 | 0.00 | 1,101,238.88 | 1,101,238.88 | 1,201,131.34 | 1,201,131.34 |
| 30 | 34 | 0.00 | 1,134,276.05 | 1,134,276.05 | 1,237,165.28 | 1,237,165.28 |
| 31 | 35 | 0.00 | 1,168,304.33 | 1,168,304.33 | 1,274,280.24 | 1,274,280.24 |
| 32 | 36 | 0.00 | 1,203,353.46 | 1,203,353.46 | 1,312,508.65 | 1,312,508.65 |
| 33 | 37 | 0.00 | 1,239,454.06 | 1,239,454.06 | 1,351,883.91 | 1,351,883.91 |
| 34 | 38 | 0.00 | 1,276,637.68 | 1,276,637.68 | 1,392,440.43 | 1,392,440.43 |
| 35 | 39 | 0.00 | 1,314,936.81 | 1,314,936.81 | 1,434,213.64 | 1,434,213.64 |
| 36 | 40 | 0.00 | 1,354,384.92 | 1,354,384.92 | 1,477,240.05 | 1,477,240.05 |
| 37 | 41 | 0.00 | 1,395,016.46 | 1,395,016.46 | 1,521,557.25 | 1,521,557.25 |
| 38 | 42 | 0.00 | 1,436,866.96 | 1,436,866.96 | 1,567,203.97 | 1,567,203.97 |
| 39 | 43 | 0.00 | 1,479,972.97 | 1,479,972.97 | 1,614,220.09 | 1,614,220.09 |
| 40 | 44 | 0.00 | 1,524,372.16 | 1,524,372.16 | 1,662,646.69 | 1,662,646.69 |
| 41 | 45 | 0.00 | 1,570,103.32 | 1,570,103.32 | 1,712,526.08 | 1,712,526.08 |
| 42 | 46 | 0.00 | 1,617,206.42 | 1,617,206.42 | 1,763,901.87 | 1,763,901.87 |
| 43 | 47 | 0.00 | 1,665,722.61 | 1,665,722.61 | 1,816,818.93 | 1,816,818.93 |
| 44 | 48 | 0.00 | 1,715,694.29 | 1,715,694.29 | 1,871,323.50 | 1,871,323.50 |
| 45 | 49 | 0.00 | 1,767,165.12 | 1,767,165.12 | 1,927,463.20 | 1,927,463.20 |
| 46 | 50 | 0.00 | 1,820,180.07 | 1,820,180.07 | 1,985,287.10 | 1,985,287.10 |

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY Form A569CG-2

XADV13436 01/10

John Knight - Age 4 - Male (Owner)  Non-Qualified  Withdrawal Charge Period: 5 years  Initial Premium: $500,000

## Tabular Detail

| End of Contract Year | Age | Premium | Guaranteed Values Withdrawal Value | Guaranteed Values Accumulated Value | Non-Guaranteed Values Withdrawal Value | Non-Guaranteed Values Accumulated Value |
|---|---|---|---|---|---|---|
| 1 | 5 | 500,000.00 | 479,400.00 | 525,500.00 | 493,970.00 | 525,500.00 |
| 2 | 6 | 0.00 | 494,190.00 | 536,010.00 | 514,700.98 | 541,780.50 |
| 3 | 7 | 0.00 | 509,379.84 | 546,730.20 | 538,242.57 | 558,586.01 |
| 4 | 8 | 0.00 | 524,979.60 | 557,664.80 | 556,625.11 | 575,922.17 |
| 5 | 9 | 0.00 | 540,999.59 | 568,818.10 | 581,860.04 | 593,755.14 |
| 6 | 10 | 0.00 | 557,450.40 | 580,194.46 | 606,039.93 | 612,161.55 |
| 7 | 11 | 0.00 | 591,798.35 | 591,798.35 | 629,608.15 | 628,608.15 |
| 8 | 12 | 0.00 | 603,634.32 | 603,634.32 | 647,551.98 | 647,551.98 |
| 9 | 13 | 0.00 | 615,707.00 | 615,707.00 | 666,007.22 | 666,007.22 |
| 10 | 14 | 0.00 | 628,021.14 | 628,021.14 | 684,988.42 | 684,988.42 |
| 11 | 15 | 0.00 | 646,861.78 | 646,861.78 | 705,538.07 | 705,538.07 |
| 12 | 16 | 0.00 | 666,267.63 | 666,267.63 | 726,704.22 | 726,704.22 |
| 13 | 17 | 0.00 | 686,255.66 | 686,255.66 | 748,505.34 | 748,505.34 |
| 14 | 18 | 0.00 | 706,843.33 | 706,843.33 | 770,960.50 | 770,960.50 |
| 15 | 19 | 0.00 | 728,048.63 | 728,048.63 | 794,089.32 | 794,089.32 |
| 16 | 20 | 0.00 | 749,890.09 | 749,890.09 | 817,912.00 | 817,912.00 |
| 17 | 21 | 0.00 | 772,386.79 | 772,386.79 | 842,449.36 | 842,449.36 |
| 18 | 22 | 0.00 | 795,558.40 | 795,558.40 | 867,722.84 | 867,722.84 |
| 19 | 23 | 0.00 | 819,425.15 | 819,425.15 | 893,754.52 | 893,754.52 |
| 20 | 24 | 0.00 | 844,007.90 | 844,007.90 | 920,567.16 | 920,567.16 |
| 21 | 25 | 0.00 | 869,328.14 | 869,328.14 | 948,184.17 | 948,184.17 |
| 22 | 26 | 0.00 | 895,407.98 | 895,407.98 | 976,629.70 | 976,629.70 |
| 23 | 27 | 0.00 | 922,270.22 | 922,270.22 | 1,005,928.59 | 1,005,928.59 |

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY Form A906CG-2

XADV13436 01/10

## Additional Benefits

**Terminal Illness Benefit:** The Company will waive the Withdrawal Charge on any amounts requested by the Owner (one time only, up to 100% of the Accumulated Value, not to exceed $250,000 for all Company Contracts) if the Owner and/or Joint Owner incurs a Terminal Illness that will, with reasonable medical certainty, result in the death of the Owner within 12 months. The withdrawal may be subject to a positive or negative Excess Interest Adjustment. State variations may apply. Please ask your Representative for more details.

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY Form A460C0-2

## Withdrawal Provisions

corporation or certain types of trusts owns the annuity.

This Contract allows you to withdraw a portion or all of the Accumulated Value. Keep in mind, an annuity's earnings are taxable as ordinary income when withdrawn. With certain exceptions, there may be a 10% federal tax penalty for distributions from Contracts before age 59½. In any case, a gain in the Contract is taxable as ordinary income upon partial or total withdrawal of the Contract. Jackson National Life Insurance Company and its affiliates do not give tax or legal advice. Please consult your tax advisor.

As required by the IRS, you are advised that any discussion of tax issues in this material is not intended or written to be used, and cannot be used, (a) to avoid penalties imposed under the Internal Revenue Code or (b) to promote, market or recommend to another party any transaction or matter addressed herein.

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your Independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY Form A6600-2

XADV13438 01/10

# Withdrawal Provisions

| Completed Years Since Premium Payment: | | | | | | |
|---|---|---|---|---|---|---|
| 0 | 1 | 2 | 3 | 4 | 5 | 6 |

Withdrawal Charge:
(Percentage of Premium and Interest Credited on such Premium.)

| 6.0% | 5.0% | 4.0% | 3.0% | 2.0% | 1.0% | 0.0% |
|---|---|---|---|---|---|---|

**Withdrawals:** The Owner may take a partial or full withdrawal from the Contract at any time. For each premium payment, a Withdrawal Charge and an Excess Interest Adjustment may apply on withdrawals made during the withdrawal charge period. Withdrawals will reduce future Contract benefits.

The Excess Interest Adjustment to which this Contract may be subject may result in an increase or decrease in the Withdrawal Value in accordance with the terms of the Contract. Withdrawals within the Contract's Withdrawal Charge period will be adjusted downward when interest rates are rising and upward when interest rates are falling, to reflect the changes in the interest crediting rate since the Premium was credited to the Contract. In no event will the Withdrawal Value be less than the Premium payment(s), adjusted for any prior withdrawals, accumulated at the guaranteed minimum interest rate less any applicable Withdrawal Charge.

The Owner may take a partial withdrawal at any time, provided the Income Date has not passed, the request is in writing and the withdrawal does not reduce the remaining Accumulated Value to less than $1,000. The withdrawal amount must be at least $50.00.

**Free Withdrawals:** Every Contract Year, you may withdraw a total of 10% of the Accumulated Value, free of Withdrawal Charges and the Excess Interest Adjustment. If a withdrawal causes total withdrawals for that Contract year to exceed 10%, then that entire withdrawal and all subsequent withdrawals for that Contract year will be subject to

Withdrawal Charges and an Excess Interest Adjustment. The free withdrawal is not cumulative. Withdrawals, with and without Withdrawal Charges and the Excess Interest Adjustment, will lower your Accumulated Value.

**Required Minimum Distributions (RMDs):** Required Minimum Distributions may be taken each Contract Year without a Withdrawal Charge, even if the amount exceeds the 10% free withdrawal provision. The withdrawal may be subject to a positive or negative Excess Interest Adjustment.

**Annuitization:** At the Income Date selected by the Owner, the Accumulated Value can be used to provide a stream of income that, among other options, can last for as long as you live. During the Withdrawal Charge period, no Withdrawal Charge or Excess Interest Adjustment will apply provided the income option elected is a life contingent option or results in payments spread over ten years or more.

The Latest Income Date allowed on fixed annuity contracts is age 95, which is the required age to annuitize or take a lump sum.

**Taxation:** Under current federal tax law, the Accumulated Value will accumulate on a tax-deferred basis each year. If you are considering an annuity to fund your qualified plan, such as an IRA or 401(k), the tax-deferral feature of an annuity offers no additional value. Tax deferral may not be available if a "non-natural person" such as a

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your Independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE SM FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY FORM AMXC-2

## Narrative Summary

under the Contract. Any remaining Withdrawal Charge will apply to the spousal continuation Contract.

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY Form M560CG-2

## Narrative Summary

The product you are considering is a flexible premium deferred fixed annuity offering a fixed interest rate, including a guaranteed minimum interest rate and excess interest as declared by the Company. This annuity may also offer you certain tax advantages, including tax deferral of interest earned. A flexible premium deferred fixed annuity is a long-term, tax-deferred vehicle designed for retirement, but other options can provide you with a guaranteed income for life. All values and information assume the Owner and Annuitant are the same person.

**Non-Guaranteed Values:** The non-guaranteed portion of the illustration assumes higher interest rates than guaranteed. Each premium payment assumes interest is credited at 5.10% for the first year (including an interest rate bonus of 2.00%), 3.10% for years 2-6 and 2.85% thereafter. This is not likely to occur. Interest rates are subject to change. Actual results may be more or less favorable than those illustrated. Interest rates illustrated will not be less than the guaranteed minimum interest rate.

The non-guaranteed Accumulated Value is equal to the net amount of premiums accumulated at the interest rates described above. The illustrated non-guaranteed Withdrawal Value is equal to the Accumulated Value, less any applicable Withdrawal Charges (less any prior withdrawals and applicable charges). The actual Withdrawal Value may also be impacted by a positive or negative Excess Interest Adjustment.

**Guaranteed Accumulated Value:** The interest rate for the initial premium is 5.10% and is guaranteed for one year from the date of payment, including an interest rate bonus of 2.00% that will be credited for the first year only. The guaranteed minimum interest rate for years 2-10 is 2.00% and 3.00% thereafter. Interest rates are subject to change, and as a result, additional premiums are illustrated at the guaranteed minimum interest rate. The guaranteed Accumulated Value is equal to the net amount of premium accumulated at the

interest rates described above.

**Guaranteed Withdrawal Value:** Withdrawals may be impacted by an Excess Interest Adjustment (positive or negative), but in no case will the guaranteed Withdrawal Value for a full withdrawal be less than premium payments accumulated at the guaranteed minimum interest rate, less any applicable Withdrawal Charges (less any prior withdrawals and applicable charges.

Guarantees are backed by the claims-paying ability of Jackson National Life Insurance Company.

**Higher Interest Crediting for Larger Premium (Form 7372G):** As a result of the premium illustrated, rates described above, except for the guaranteed minimum interest rate, include higher crediting than would normally apply to premium less than what has been illustrated. If less than the premium required for higher crediting is deposited, the actual rate may be lower. Please ask your Representative for more details.

**Death Benefit:** If the Owner dies before the Income Date, the Contract will pay the Beneficiary the death benefit. The death benefit amount will be the Accumulated Value on the date the Company receives both due proof of death and an election for the payment method. If the Annuitant dies before the Income Date, and is not the Owner, the Owner will become the Annuitant; until he/she designates a new Annuitant. If the Owner is not a natural person, the death of the primary Annuitant will be treated as the death of the primary Owner and a new Annuitant may not be designated.

Upon the death of a Joint Owner, the surviving Joint Owner, if any, will be the designated Beneficiary. Any other Beneficiary designation on record at the Company at the time of death will be treated as a contingent Beneficiary. If the Beneficiary is the spouse of the Owner, he or she may elect to continue the Contract, at the Accumulated Value, in his or her own name and exercise all of the Owner's rights

This is an illustration, not a Contract, and is not valid without all pages. State variations may apply. The annuity contract has limitations and restrictions. Jackson offers other fixed products with different features, benefits and charges. Please contact your independent Jackson Representative or the Company for additional information.

JACKSON NATIONAL LIFE INSURANCE COMPANY, 1 CORPORATE WAY, LANSING, MI 48951
MAX ONE XL FLEXIBLE PREMIUM DEFERRED FIXED ANNUITY (Form A666-04)

XADV13436 0115D